S13A0012. HOLTON v. PHYSICIAN ONCOLOGY SERVICES, LP et al.

(742 SE2d 702)

HUNSTEIN, Chief Justice.

In this case involving restrictive covenants in an employment agreement, Michael Holton appeals from the grant of an interlocutory injunction prohibiting him from working in an executive capacity for a particular competitor of his former employer for one year. He also challenges the trial court's ruling that he would inevitably disclose his former employer's trade secrets and confidential information in violation of the Trade Secrets Act and his confidentiality covenant if he went to work for the competing business. Because a stand-alone claim for the inevitable disclosure doctrine of trade secrets — untethered from the provisions of our state trade secret statute — is not cognizable in Georgia, we reverse the part of the order enjoining Holton from the inevitable disclosure and use of trade secrets. On the remaining issues, we dismiss as moot his challenge to the order enjoining him from working for the competitor until October 2012 and affirm the part of the order enforcing the confidentiality covenant.

Holton was hired in August 2009 as the vice president and chief operating officer of Physician Oncology Services, LP, which provides radiation therapy services to cancer patients. In that position and later as president, Holton was responsible for overseeing the operations of seven facilities then operating in the metro Atlanta area. As part of the hiring process, Holton executed an employment agreement that contained a one-year noncompete covenant in which he agreed not to provide similar services to a competing business within a 25-mile radius of the seven company locations. The agreement also had a two-year confidentiality covenant in which he agreed not to use, divulge, disclose, or make accessible any confidential or proprietary information of the business or any personal information, which is defined as "any information concerning the personal, social, or business activities of its officers, directors, principals, partners, shareholders, agents, and employees."

In January 2011, Physician Oncology Services merged with Vantage Oncology, LLC, which operates 45 radiation oncology treatment centers in 12 states, including five in the Atlanta area. Following the merger, Holton continued to have oversight responsibilities for the operational facilities in Georgia and was the senior executive in charge of a project to integrate the two companies. In late May, Holton was removed from direct supervision of the day-to-day operations in Atlanta and became responsible for facilities in other states. On October 4, 2011, Vantage terminated Holton without cause, effective immediately.

A month later, Holton accepted employment with Ambulatory Services of America, Inc., to become the chief executive officer of its radiation oncology business, Radiation Oncology Services of America, Inc. (ROSA). ROSA is a competitor of Vantage and had four operating centers within the noncompete territory in Holton's employment agreement, none of which were to fall within Holton's day-to-day oversight. Vantage immediately sought a temporary restraining order and then an interlocutory injunction, alleging that Holton had violated his noncompete and confidentiality covenants, misappropriated trade secrets in violation of the Georgia Trade Secrets Act of 1990, and would inevitably disclose and use Vantage's trade secrets. Vantage sought an injunction to prevent Holton from working for ROSA, which the trial court granted. The trial court found that Holton had knowledge of the following trade secrets and confidential information: a company initiative on a new technology measuring radiation doses, a project to improve business and management processes, the details of a direct-to-patient marketing plan, the markets and physicians' practices targeted by Vantage for development or acquisition, and the company's "practice models." The trial court's order enjoined Holton from (1) working for ROSA in any executive capacity from "the date of this Order through October 4, 2012," (2) providing services that are substantially similar to the duties he performed for Vantage to any other competing business within a 25-mile radius of seven locations in metro Atlanta through October 4, 2012, and (3) using or disclosing confidential information or personal information that are trade secrets in perpetuity and those that do not qualify as trade secrets through October 4, 2013. Holton sought a stay of the injunction, which was denied. He appealed to the Court of Appeals, which transferred the case to this Court on the grounds that the appeal involves the legality and propriety of equitable relief. See *Lee v. Environmental Pest & Termite Control, Inc.*, 271 Ga. 371 (1) (516 SE2d 76) (1999). Holton did not file a motion for supersedeas in this Court to try to prevent the appeal from becoming moot.

1. Holton first challenges the trial court's ruling that Vantage was likely to succeed on its claim that the noncompete covenant was valid under Georgia law and Holton's employment with ROSA would constitute a breach of that covenant. Since October 4, 2012, when his noncompete covenant expired, Holton has been working as ROSA's chief executive officer. At oral argument, Vantage acknowledged that it did not view Holton as violating the noncompete covenant as long as he abided by the confidentiality covenant. Because the injunction related to the one-year covenant not to compete has ended, we dismiss the appeal from that portion of the trial court's order as moot. See *Kellam v. Guthman Laundry and Dry Cleaning Co.*, 147 Ga. 133 (92 SE 872) (1917) (question whether employer properly granted injunction became moot after time expired for enforcing terms of order).

2. Holton next challenges the trial court's ruling that Vantage was likely to prevail on the merits of its claim for the inevitable disclosure of trade secrets because Georgia has not adopted the inevitable disclosure doctrine and there is no evidence he has any Vantage documents or recalls any of its trade secrets. In its complaint, Vantage alleged as a separate claim that Holton "would inevitably misappropriate, disclose, and misuse" Vantage's trade secrets and other confidential information in violation of the state trade secrets law and his employment agreement and sought to enjoin him from serving in an executive capacity for ROSA for at least 12 months. Ruling in Vantage's favor, the trial court determined that there was a substantial likelihood that Vantage would prevail on the merits of its claim that Holton, if employed by ROSA, "would inevitably disclose the confidential information and trade secrets of Plaintiffs."

The purpose of an interlocutory injunction is "to maintain the status quo pending a final adjudication on the merits of the case." *Hampton Island Founders v. Liberty Capital*, 283 Ga. 289, 293 (1) (a) (658 SE2d 619) (2008). A trial court has broad discretion in deciding whether to grant an interlocutory injunction. *Byelick v. Michel Herbelin USA*, 275 Ga. 505 (1) (570 SE2d 307) (2002); OCGA § 9-5-8. Among the factors it considers are whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

*SRB Investment Services, LLLP v. Branch Banking and Trust Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011) (citation omitted). The trial court's decision will not be reversed on appeal "unless the trial court made an error of law that contributed to the decision, there was no evidence on an element essential to relief, or the court manifestly abused its discretion." Id. (citation and punctuation omitted); see also *Paramount Tax & Accounting, LLC v. H & R Block Eastern Enterprises, Inc.*, 299 Ga. App. 596, 597 (683 SE2d 141) (2009) (abuse of discretion may be found "where the trial court misinterpreted or misapplied the relevant law").

The Georgia Trade Secrets Act of 1990 prohibits the actual or threatened misappropriation of trade secrets by a person who acquires knowledge of the trade secret "under circumstances giving rise to a duty to maintain its secrecy or limit its use." OCGA §§ 10-1-761 (2) (B) (ii) (II), 10-1-762. A trade secret is defined as:

> . . . information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:
>
> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OCGA § 10-1-761 (4).

At the hearing on the interlocutory injunction, Vantage did not present evidence that Holton had shared any trade secrets, disclosed any confidential information, or shown an intent to use proprietary information. Holton testified that he did not have any documents related to Vantage's trade secrets in his possession and that ROSA had instructed him to abide by his confidentiality agreement; his attorney stated that all Vantage documents had been permanently deleted from Holton's computer. Vantage's chief executive officer testified that he had no knowledge that Holton retained any document, but was confident that he retained knowledge of major company initiatives "in his head." Therefore, it is the likelihood of

disclosure from matters in Holton's memory that forms the basis for the trial court's finding of inevitable disclosure.

The inevitable disclosure doctrine provides that "a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *PepsiCo, Inc. v. Redmond,* 54 F3d 1262, 1269 (7th Cir. 1995). The doctrine enables "a trade secret owner to prevent a former employee from working for a competitor . . . by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." *Whyte v. Schlage Lock Co.,* 125 Cal. Rptr. 2d 277, 281 (Ct. App. 2002). The doctrine may impose a noncompete covenant where one does not exist or, as in this case, extend a covenant not to compete beyond the time negotiated by the parties. See id. at 281, 292. Among the factors that courts consider in applying the doctrine are whether: (1) the employers are direct competitors providing similar products and services; (2) the employee's position with the new employer has responsibilities similar to the position held with the former employer; (3) the employee will be unable to complete those responsibilities without relying on the former employer's trade secrets, and (4) the trade secrets are valuable to both employers. See id. at 290; *Earth-Web, Inc. v. Schlack,* 71 FSupp.2d 299, 310 (S.D.N.Y. 1999). Many courts also consider the former employee's bad faith conduct or intent to disclose trade secrets as a factor in determining whether to apply the doctrine. See *Ackerman v. Kimball Intl., Inc.,* 652 NE2d 507, 510-511 (Ind. 1995) (upholding one-year injunction based on threat of misappropriation from employee's "pre-departure harvesting" of employer's proprietary information).[1]

As one state court has noted, "the theory remains the subject of considerable disagreement." *LeJeune v. Coin Acceptors, Inc.,* 849 A2d 451, 470 (Md. 2004) (citing cases). The case law in other states is inconsistent about whether the doctrine is recognized in their particular state[2] and, if it does, whether it is a separate claim, as Vantage

---

[1] But see *Merck & Co., Inc. v. Lyon,* 941 FSupp. 1443, 1460 (M.D.N.C. 1996) (relying on North Carolina case law that "a showing of bad faith or underhanded dealing by the former employee or new employer would not necessarily be required" when the injunction is limited to "specifically defined" and clearly identified trade secrets "of significant value"). See generally Ryan M. Wiesner, *A State-by-State Analysis of Inevitable Disclosure: A Need for Uniformity and a Workable Standard,* 16 Marq. Intell. Prop. L. Rev. 211, 229 (2012) (proposing standard that requires showing of employee's bad faith or intent to disclose when there is no valid employment agreement that is narrowly tailored to protect the employer's trade secrets).

[2] See, e.g., Barry L. Cohen, *The Current Status of the Inevitable Disclosure Doctrine,* 3 No. 2 Landslide 40 (2010); Jessica Lee, *The Inevitable Disclosure Doctrine: Safeguarding the Privacy of Trade Secrets,* 33 Colo. Law. 17 (Oct. 2004); Brandy L. Treadway, *An Overview of*

alleged in this case, or instead is evidence to support an element of a claim of a threatened misappropriation. Compare *Interbake Foods, L.L.C. v. Tomasiello*, 461 FSupp.2d 943, 973 (N.D. Iowa 2006) ("the inevitable disclosure doctrine is just one way of showing a threatened disclosure") with *Central Valley Gen. Hosp. v. Smith*, 75 Cal. Rptr. 3d 771, 789 (Ct. App. 2008) (construing inevitable disclosure doctrine as an alternative to proof of actual or threatened misappropriation).

In support of its conclusion that Holton "would inevitably disclose the confidential information and trade secrets" of Vantage, the trial court cited without discussion the Georgia Trade Secrets Act and *Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553 (1) (501 SE2d 501) (1998). In *Essex Group v. Southwire Co.*, we held that Southwire's logistics system as a whole was a trade secret under the Georgia Trade Secrets Act and upheld the trial court's injunction prohibiting the employee who headed the three-year, $2 million development project from working in Essex's logistics department for up to five years. In reaching that conclusion, we rejected Essex's arguments that the system could not be a trade secret because it was composed primarily of component parts that were in the public domain, it could be independently discovered or ascertained by others, and the former employee's information about the system reflected only his general knowledge, skill, and experience. Id. at 555-557. Instead, we noted that Essex "sought to obtain, by the simple act of hiring [the project head], all the logistics information" developed through years of testing that Southwire had conducted to gain a competitive advantage over Essex and other cable and wire companies. *Essex*, 269 Ga. at 557.

While Vantage argues that this Court upheld the use of the inevitable disclosure concept in *Essex*,[3] our review of that decision shows it did not expressly address the doctrine. We have repeatedly cautioned that our decisions stand only for the points raised by the parties and decided by the court. See, e.g., *State v. Outen*, 289 Ga. 579 (714 SE2d 581) (2011); *Palmer v. State*, 282 Ga. 466 (651 SE2d 86) (2007). "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered

---

*Individual States' Application of Inevitable Disclosure: Concrete Doctrine or Equitable Tool?*, 55 SMU L. Rev. 621 (2002); Wiesner, *A State-by-State Analysis*, 16 Marq. Intell. Prop. L. Rev. at 216, 228.

[3] See Erika C. Birg, *Application of the "Inevitable Disclosure" Doctrine in Georgia*, 6 Ga. B.J. 58 (April 1999) (arguing Court's decision in *Essex* "may have rested in part on an implicit adoption of the inevitable disclosure doctrine"); Wiesner, *State-by-State Analysis*, 16 Marq. Intell. Prop. L. Rev. at 220 (while acknowledging that Georgia does not expressly use the doctrine, noting that the court in *Essex* enjoined a company from hiring a competitor's employee solely to obtain its competitor's trade secrets and gain a competitive advantage).

as having been so decided as to constitute precedents." Id. at 468 (citation and punctuation omitted). Since our decision in *Essex* did not mention the doctrine or cite any cases applying it, it does not stand for the proposition that this State adopted the inevitable disclosure doctrine in that case.

In this case, we hold that the inevitable disclosure doctrine is not an independent claim under which a trial court may enjoin an employee from working for an employer or disclosing trade secrets. Therefore, we reverse the part of the trial order relying on the inevitable disclosure doctrine to enjoin Holton from working for ROSA or disclosing trade secrets and other confidential information. Because it appears that the trial court did not reach Vantage's claim for actual or threatened misappropriation of trade secrets and the case returns to the trial court for a final adjudication on the merits, we decline to address today whether the inevitable disclosure doctrine may be applied to support a claim for the threatened misappropriation of trade secrets.

3. As his final contention, Holton asserts that the trial court erred in ruling that Vantage was substantially likely to prevail on its claim for breach of the confidentiality covenant because it is overbroad. In its order, the trial court enjoined the use of "confidential information" and "personal information" as those terms were defined in the employment agreement; it did not draw the injunction narrowly based on the specific information that needed protection. See *Durham v. Stand-By Labor of Georgia, Inc.*, 230 Ga. 558 (2) (b) (198 SE2d 145) (1973) (in determining whether restraints on disclosure are reasonable, courts should consider "whether the employer is attempting to protect confidential information relating to the business" and "whether the restraint is reasonably related to the protection of the information"). While we have serious concerns that the injunction based on these definitions is unreasonably broad, covering a large amount of information that cannot be considered confidential, much less proprietary or a trade secret, Holton raises the issue for the first time on appeal. As a result, we feel compelled to affirm that part of the interlocutory injunction, although Holton may raise the argument in the trial court during any final hearing in this matter.[4]

*Judgment affirmed in part and reversed in part, and case dismissed in part. All the Justices concur.*

---

[4] The 2011 act revising the law related to restrictive covenants in contracts does not apply to contracts entered into before May 11, 2011. See Ga. L. 2011, p. 399, § 5. Therefore, the act's provision on judicial modification of restrictive covenants does not apply here. See OCGA § 13-8-54 (b).

Decided May 6, 2013.

*Greenberg Traurig, Peter N. Hall, David W. Long-Daniels, Michael J. King*, for appellant.

*McKenna, Long & Aldridge, R. Daniel Beale, Spencer F. Preis, Shannon R. Creasy*, for appellee.