**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A1097. LAPOLLA INDUSTRIES, INC. et al. v. HESS et al.

ANDREWS, Presiding Judge.

This appeal arises from a claim made by Lapolla Industries, Inc. that a competing business, Premium Spray Products, Inc., and Maclean Hess (on behalf of Premium) hired, or were attempting to hire, five former employees of Lapolla in violation of non-compete covenants in employment agreements between Lapolla and the former employees. In response to Lapolla's demand letter that Premium and Hess cease this activity with respect to the former employees, or face legal action for alleged tortious interference with the employment agreements, Premium and Hess filed a declaratory judgment action against Lapolla seeking a declaration that they were not tortiously interfering with Lapolla's contractual relations with the former

employees because the non-compete covenants in the agreements were void and unenforceable.

The trial court entered an order granting a motion by Hess and Premium for a partial final judgment on the pleadings as to count two of the complaint (which sought a declaratory judgment as to the non-compete covenants), and pursuant to OCGA § 9-11-54 (b) the court entered a partial final judgment on count two.[1] The court found that, because the pleadings showed that the non-compete covenants in Lapolla's employment agreements with the former Lapolla employees were void and unenforceable as a matter of law, Hess and Premium were entitled to a declaration that any activities in violation of the non-compete covenants "are not tortiously interfering with and cannot tortiously interfere with Lapolla's contractual relations

---

[1] Although the trial court inadvertently referred to count one of the complaint in the order and partial judgment, it is undisputed that the court actually ruled as to the non-compete covenants set forth in count two. In addition to the claim for a declaratory judgment brought by Premium and Hess against Lapolla related to the non-compete covenants (count two), the suit, as amended, includes separate claims for declaratory judgments brought by Hess against Lapolla seeking declarations that Hess (also a former Lapolla employee) was not violating non-solicitation and non-disclosure covenants in his employment agreement with Lapolla because those covenants were also void and unenforceable (counts three and four). The suit also names as a defendant Douglas Kramer, the President and Chief Executive Officer of Lapolla, and includes a count brought by Hess against Kramer alleging defamation (count one). This appeal concerns the trial court's rulings on count two on the non-compete covenants. The claims set forth in counts one, three, and four of the complaint remain pending in the trial court.

2

with the former Lapolla employees." The trial court denied a motion by Lapolla and Kramer to dismiss or stay the suit. Lapolla and Kramer appeal from these rulings, and for the following reasons, we affirm in part and reverse in part.

1. Lapolla and Kramer contend that, because Premium and Hess were not parties to the employment agreements between Lapolla and the former Lapolla employees, they had no standing to seek a declaratory judgment with respect to the non-compete covenants in the agreements.

A superior court is authorized under OCGA § 9-4-2 (a) and (b) to enter a declaratory judgment "to declare rights and other legal relations of any interested party" petitioning for a declaration "in cases of actual controversy" under subsection (a), and in "any civil case in which . . . the ends of justice require that the declaration should be made" under subsection (b). The declaratory judgment statute is liberally construed; applies where a legal judgment is sought that would control or direct future action; and requires under subsection (a) or (b) the presence in the declaratory action of a party with an interest in the controversy adverse to that of the petitioner. *Famble v. State Farm Ins. Co.*, 204 Ga. App. 332, 333-334 (419 SE2d 143) (1992); *Atlanta Cas. Co. v. Fountain*, 262 Ga. 16, 17 (413 SE2d 450) (1992).

We find under the circumstances of this case that the requirements for application of the declaratory judgment statute have been met. Similar circumstances were present in *Enron Capital & Trade Resources Corp. v. Pokalsky*, 227 Ga. App. 727 (490 SE2d 136) (1997), where an individual and his current employer were uncertain as to the legal right to continue their employment relationship in the future in light of restrictive covenants contained in an employment agreement between the individual and a former employer. Id. at 728-730. We found under those circumstances that the current employer and the individual were entitled to bring a declaratory judgment action under OCGA § 9-4-2 against the former employer seeking a declaration as to the legal effect of the covenants on the current employment relationship. Id. Similarly, in light of the non-compete covenants between Lapolla and the former Lapolla employees in the present case, Premium and Hess were uncertain as to their legal right to continue attempts to hire (or continue to employ) the former Lapolla employees. Under these circumstances, Premium and Hess had standing to bring a declaratory judgment action under OCGA § 9-4-2 against Lapolla to seek a declaration as to the legal effect of the non-compete covenants in the employment agreements. *Enron*, supra.

4

2. Lapolla contends that the trial court erred in granting a declaratory judgment on the pleadings as to count 2 declaring as a matter of law that the non-compete covenants contained in the employment agreements between Lapolla and its former employees were void and unenforceable.

> [A] motion for judgment on the pleadings is authorized where the undisputed facts that appear from the pleadings establish that the movant is entitled to judgment as a matter of law. All well-pleaded facts are to be accepted as true. However, the trial court is not required to adopt a party's legal conclusions based on those facts.

*Novare Group, Inc. v. Sarif*, 290 Ga. 186, 191 (718 SE2d 304) (2011) (citations omitted); OCGA § 9-11-12 (c). In others words, "[t]he granting of a motion for judgment on the pleadings under [OCGA § 9-11-12 (c)] is proper only where there is a complete failure to state a cause of action or defense." *Pressley v. Maxwell*, 242 Ga. 360 (249 SE2d 49) (1978). In considering a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings, including exhibits attached to the complaint or the answer. *Raysoni v. Payless Auto Deals, LLC*, ___ Ga. App. ___ (746 SE2d 250, 253 n. 5) (2013); *Shreve v. World Championship Wrestling, Inc.*, 216 Ga. App. 387, 388 (454 SE2d 555) (1995); OCGA § 9-11-10 (c).

5

In the present case, the complaint for declaratory judgment alleged that all five of the Lapolla former employees at issue had non-compete covenants in their employment agreements with Lapolla that were void and unenforceable under Georgia law. The complaint attached and incorporated a letter from Lapolla's attorneys to Premium and Hess regarding the "Employment Agreements and Restrictive Covenants Contained Therein between Lapolla Industries, Inc. and Ted Medford, Troy Herring, Carl McKettrick, Vincent Majewski, and Moody Ozier." The letter stated that attempts by Premium and Hess to hire any of the former employees (or actual employment of the former employees) violated non-compete covenants in their employment agreements with Lapolla; demanded that Premium and Hess cease any such activity; and stated that:

[t]he Non-Compete language for each employee is set forth as follows:

During the Employment Period and for a period of two (2) years after the termination of Employee's employment with [Lapolla] for any reason (collectively the "Restriction Period"), the Employee shall not, either directly or indirectly, for himself or any third party, anywhere within North America: (a) engage in or have any interest in any activity that directly or indirectly competes with the business of [Lapolla] or any of its affiliates as conducted at any time during the Employment Period, including without limitation, accepting employment from or providing consulting services to any such competitor, owning any interest in or being a partner, shareholder or owner of any such competitor, (b) solicit,

6

induce, recruit, or cause another person in the employ of [Lapolla] or its affiliates or who is a consultant or independent contractor for [Lapolla] or its affiliates to terminate his employment, engagement or other relationship with [Lapolla] or its affiliates, or (c) solicit or accept business from any individual or entity which shall have obtained the goods or services of, or purchased goods or services from, [Lapolla] or its affiliates during the two year period immediately prior to the end of the Employment Period or which otherwise competes with or engages in a business which is competitive with or similar to the business of [Lapolla] or any of its affiliates, (d) call on, solicit or accept any business from any of the actual or targeted prospective customers of [Lapolla] or its affiliates (the identity of and information concerning which constitute trade secrets and Confidential Information of [Lapolla]) on behalf of any person or entity in connection with any business competitive with the business of [Lapolla], nor shall the Employee make known the names and addresses of such customers or any information relating in any manner to [Lapolla's] trade or business relationships with such customers, other than in connection with the performance of Employee's duties under this Agreement.[2]

In response to the complaint, Lapolla and Kramer filed an answer which admitted that

the letter attached to the complaint was a true and correct copy of the letter sent by

---

[2] This language, referred to by the parties and the trial court as "non-compete" covenants, sets forth five covenants restricting activity by Lapolla's former employees. Subparagraph (a) restricts engaging in competition with Lapolla; subparagraph (b) restricts solicitation of current Lapolla employees, consultants, or independent contractors; subparagraph (c) restricts solicitation of business from entities which purchase goods or services from Lapolla or which otherwise compete with or are similar to Lapolla; and a portion of subparagraph (d) restricts solicitation of Lapolla customers. The fifth covenant, which is also set forth as part of subparagraph (d), restricts disclosure of Lapolla's trade secrets and confidential information. The above language setting forth these restrictive covenants is collectively referred to in this opinion as the "non-compete" language or covenants.

7

Lapolla. The answer also attached as an exhibit a copy of one of the five employment agreements at issue (Ozier's agreement) which contained the exact "non-compete" covenants referred to in Lapolla's letter as "the Non-Compete language for each employee."

Lapolla and Kramer argue for the first time on appeal that the trial court erred by ruling on the motion for judgment on the pleadings because the court should have allowed discovery with respect to the employment agreements with the former employees. Lapolla contends for the first time on appeal that it "does not have a copy of the complete agreements and never had an opportunity to seek them in discovery." According to Lapolla, it attached a copy of Ozier's employment agreement to its answer merely as an example of an agreement containing the "non-compete" language contained in its letter to Premium and Hess, and was forced to "trust that the remaining agreements were identical."

As stated above, the record shows to the contrary that Lapolla conceded in its answer that the letter it sent to Premium and Hess (attached to the complaint) set forth in the Non-Compete language for each employee," and LaPolla's answer attached as an exhibit an employment agreement containing the same "non-compete" language set forth in the letter. Moreover, LaPolla's subsequent motion to dismiss or stay the

8

proceedings also conceded that the pleadings set forth the "non-compete" language contained in all the agreements. Lapolla's motion states:

> All of the facts are taken from Plaintiffs' Complaint, documents attached to Plaintiffs' Complaint, and the Agreements between Lapolla and its former employees referenced in Plaintiffs' Complaint and attached to Defendants' Answer. This Court is permitted to refer to the Agreements because they are part of the pleadings in this case, and are central to Plaintiffs' claims.

In the same motion, Lapolla again refers to the letter it sent to "Hess and Premium advising them that the Former Employees were acting in competition with Lapolla in violation of the Agreements." Finally, Lapolla's Brief on Appeal recognizes that:

> Lapolla entered into employment agreements (the 'Agreements') with it now-former employees, including Ted Medford, Troy Herring, Carl McKettrick, Vincent Majewski, and Moody Ozier (the 'Former Employees'), all of which contained covenants not to compete (the 'Restrictive Covenants').

In support of this statement in its appellate brief that all five employment agreements contained the "non-compete" covenants, Lapolla's brief cites in the record to the "non-compete" language contained in the employment agreement attached as an exhibit to its answer.

Nothing in the record shows that Lapolla or Kramer sought or was denied the opportunity for discovery with respect to Lapolla's employment agreements with its

9

former employees. Rather, the record shows that, in responding in the trial court to the motion for partial judgment on the pleadings, Lapolla conceded that the "non-compete" language set forth in the pleadings was the same in all five of its employment agreements with its former employees. "Issues never raised at trial will not be considered for the first time on appeal." *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 263 (719 SE2d 489) (2011) (punctuation and citations omitted). Lapolla and Kramer also contend for the first time on appeal "that discovery would likely have shown that at least some, if not all, of the restrictive covenants in question were ancillary to the sale of a business to Lapolla, which changes the analysis under Georgia law as to whether the restrictive covenants were valid."[3] Again, neither Lapolla nor Kramer made this contention or sought discovery on this issue in the trial court. A party cannot ignore an alleged injustice in the trial court, take the chance on a favorable ruling, and then complain for the first time on appeal. *Alexandrov v.*

---

[3] By this claim, Lapolla contends for the first time on appeal that, if discovery showed that the employment agreements contained "non-compete" covenants that were ancillary to the sale of a business to Lapolla, the trial court would have applied a lower level of scrutiny than the "strict scrutiny" applied to covenants ancillary to employment contracts, and would have blue-penciled the covenants to sever over-broad or illegal provisions. See *Jenkins v. Jenkins Irrigation, Inc.*, 244 Ga. 95 (259 SE2d 47) (1979).

*Alexandrov*, 289 Ga. 126, 127 (709 SE2d 778) (2011). Lapolla and Kramer waived this contention. Id.

In ruling on the motion for judgment on the pleadings, the trial court properly considered the exhibits attached to the complaint and the answer as establishing the language set forth in the "non-compete" covenants contained in the employment agreements between Lapolla and its five former employees. The trial court also correctly ruled under applicable Georgia law that the restrictive covenant considered by the court was void and unenforceable on its face.[4]

Because the pleadings show that the restrictive covenants at issue arise out of employment agreements, the trial court correctly applied "strict scrutiny" in its consideration of restrictions on competition contained in the covenant. *Gordon Document Products, Inc. v. Service Technologies, Inc.*, 308 Ga. App. 445, 447 (708

---

[4] The 2011 act revising Georgia law related to restrictive covenants in contracts (OCGA § 13-8-50 et seq.) does not apply to contracts entered into before May 11, 2011. Ga. L. 2011, p. 399, § 5; *Holton v. Physician Oncology Services, LP*, 292 Ga. 864, 870 n. 4 (742 SE2d 702) (2013). Because it is undisputed that the employment agreements at issue were entered into prior to May 11, 2011, OCGA § 13-8-50 et seq. does not apply in this case. The trial court correctly applied Georgia law relating to restrictive covenants in employment contracts as it existed prior to the revisions in OCGA § 13-8-50 et seq.

SE2d 48) (2011); *American Control Systems, Inc. v. Boyce*, 303 Ga. App. 664, 667 (694 SE2d 141) (2010). Whether the restrictions on competition contained in the "non-compete" covenants were reasonable, and therefore legal, was a question of law for the trial court. *Rollins Protective Services Co. v. Palermo*, 249 Ga. 138, 139 (287 SE2d 546) (1982).

> Although facts may be necessary "to show that a questionable restriction, though not void on its face, is, in fact, reasonable," a covenant containing sufficiently indefinite restrictions "[can]not be saved by additional facts" and is "void on its face." *Kroger Properties v. Adams-Cates Co.*, 247 Ga. 68, 69 (2) (274 SE2d 329) (1981); see also *Uni-Worth Enterprises v. Wilson*, 244 Ga. 636, 640-641 (261 SE2d 572) (1979) (affirming grant of interlocutory injunction when the enforceability of restrictive covenants "was a legal question which could be determined by looking solely to the language of the restrictive covenant").

*Global Link Logistics, Inc. v. Briles*, 296 Ga. App. 175, 177 (674 SE2d 52) (2009). Moreover, where strict scrutiny applies to a non-compete covenant in an employment agreement, Georgia does not use the "blue pencil" doctrine of severability – the rule is that the court will not sever or "blue pencil" an unenforceable non-compete covenant and enforce reasonable restrictions in other non-compete covenants, but will declare all the non-compete covenants unenforceable. *Advance Technology Consultants, Inc. v. Roadtrac, LLC*, 250 Ga. App. 317, 320-321 (551 SE2d 735)

12

(2001); *Paramount Tax & Accounting, LLC v. H & R Block Eastern Enterprises, Inc.*, 299 Ga. App. 596, 602 (683 SE2d 141) (2009).

But the rule that unenforceable non-compete covenants will not be severed or "blue-penciled" does not apply equally to all types of covenants restricting competition. As to the five restrictive covenants set forth in the "non-compete" language at issue in the present case (see n. 2, supra), the non-severability rule applies to three of those covenants: the covenant restricting employment with a Lapolla competitor (subparagraph (a)), the covenant restricting solicitation of business from entities doing business with or competing with Lapolla (subparagraph (c)), and the covenant restricting solicitation of Lapolla customers (set forth in a portion of subparagraph (d)). *Sunstates Refrigerated Services, Inc. v. Griffin*, 215 Ga. App. 61-62 (449 SE2d 858) (1994). As to those three non-compete and non-solicitation covenants, all are treated as non-compete covenants for purposes of the non-severability rule – if any one is unenforceable, all three are unenforceable. Id.; *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 638-640 (261 SE2d 572) (1979); *Ward v. Process Control Corp.*, 247 Ga. 583-584 (277 SE2d 671 (1981); *Roadtrac*, 250 Ga. App. at 320. As to the remaining two covenants, which restrict solicitation and hiring of current Lapolla employees (subparagraph (b)) and restrict disclosure of

13

Lapolla trade secrets and confidential information (set forth as part of subparagraph (d)), those covenants are analyzed separately. *Sunstates*, 215 Ga. App. at 61-62. In other words, the latter two covenants do not automatically fail under the non-severability rule if any one of the other three fail. Id.; *Wiley v. Royal Cup, Inc.*, 258 Ga. 357, 359-360 (370 SE2d 744) (1988); *Lane Co. v. Taylor*, 174 Ga. App. 356, 359 (330 SE2d 112) (1985).

In ruling on the motion for declaratory judgment on count 2, the trial court considered the restrictive covenant set forth in subparagraph (a) of the "non-compete" language. The covenant set forth in subparagraph (a) provides that the former Lapolla employees shall not

> engage in or have any interest in any activity that directly or indirectly competes with the business of [Lapolla] or any of its affiliates as conducted at any time during the Employment Period, including without limitation, accepting employment from or providing consulting services to any such competitor, owning any interest in or being a partner, shareholder or owner of any such competitor.

This language contains no reasonable limit on the kind, character, or scope of work restricted and effectively restricts the former employees from working for a Lapolla competitor in any capacity. A non-compete covenant is too broad and indefinite to

be enforceable where it contains no limit on the work restricted and effectively prohibits an employee from working for a competitor in any capacity. *McNease v. Nat. Motor Club of America, Inc.*, 238 Ga. 53, 56 (231 SE2d 58) (1976); *Howard Schultz & Assoc. &c., Inc. v. Broniec*, 239 Ga. 181, 184 (236 SE2d 265) (1977); *Arnall Ins. Agency, Inc. v. Arnall*, 196 Ga. App. 414, 416-418 (396 SE2d 257) (1990); *Russell Daniel Irrigation Co. v. Coram*, 237 Ga. App. 758, 760 (516 SE2d 804) (1999). Moreover, the restriction on acting as a partner, shareholder, or owner of a competitor is overbroad and unenforceable because, by definition, it prohibited activities beyond the scope of those performed for Lapolla by its former employees. *Wright v. Power Industry Consultants, Inc.*, 234 Ga. App. 833, 834-835 (508 SE2d 191) (1998), overruled on other grounds, *Roadtrac,* 250 Ga. App. at 321; *Ceramic & Metal Coatings Corp. v. Hizer*, 242 Ga. App. 391, 393-394 (529 SE2d 160) (2000).

Accordingly, the trial court correctly found that the pleadings show the restrictive covenant set forth in subparagraph (a) was void on its face and unenforceable as a matter of law. Under the non-severability rule, the trial court also correctly found that the restrictive covenant set forth in subparagraph (c), and the covenant restricting solicitation of Lapolla customers (as set forth in a portion of

15

subparagraph (d)) are also unenforceable as a matter of law.[5] The trial court did not separately consider the enforceability of the two restrictive covenants set forth in subparagraph (b), and in the portion of subparagraph (d) dealing with restrictions on disclosure of Lapolla trade secrets and confidential information. As set forth above, these two restrictive covenants do not automatically fail under the non-severability rule, so the trial court erred by applying the non-severability rule to find that these covenants were unenforceable as a matter of law. It follows that the trial court's declaratory judgment order, and partial final judgment on the pleadings, on count two of the complaint is affirmed in part (to the extent it declared that no tortious interference can be alleged for a violation of the three restrictive covenants it correctly found to be non-severable and unenforceable), and reversed in part (to the extent it erroneously applied the non-severability rule and declared that no tortious interference can be alleged for a violation of the remaining two restrictive covenants).

3. Lapolla and Kramer contend that the trial court erred by refusing to grant their motion to dismiss the action on the basis that the employment agreements

_____

[5] Lapolla makes no argument on appeal that these restrictive covenants are valid under Georgia law.

16

contain forum selection clauses requiring that "venue for any action brought hereunder shall be exclusively in Harris County, Texas."

The employment agreements also contain choice of law clauses which provide that they "shall be governed by and construed in accordance with the laws of the state of Texas." Accordingly, if enforced together, the forum selection and choice of law clauses in the employment agreements would require that the present action be brought before a Texas court applying Texas law. The record shows that Premium is a Georgia corporation with its principal place of business in Georgia, and that Hess is a Georgia resident. Lapolla is a Delaware corporation with its principal place of business in Texas, and Kramer is a resident of Texas. The trial court denied the motion to dismiss and refused to enforce the forum selection and choice of law clauses on the basis of Georgia public policy.

The enforceability of the forum selection clauses is a procedural issue which, under the rule of lex fori, requires application of the law of Georgia (where suit was filed), even though the employment agreements also contain choice of law clauses requiring application of Texas substantive law. *Brinson v. Martin*, 220 Ga. App. 638-639 (469 SE2d 537) (1996). A forum selection clause in a contract is prima facie valid and will be enforced unless the opposing party establishes a compelling reason

17

that enforcement would be unreasonable under the circumstances. *Iero v. Mohawk Finishing Products, Inc.*, 243 Ga. App. 670, 671 (534 SE2d 136) (2000). "[P]ublic policy may afford a compelling reason to avoid a forum-selection clause, at least to the extent that proceedings in the selected forum are likely to produce a result that offends a settled public policy of Georgia." *Carson v. Obor Holding Co.*, 318 Ga. App. 645, 648 (734 SE2d 477) (2012) (punctuation and citation omitted); *Iero*, 243 Ga. App. at 671. A similar rule applies to enforcement of the choice of law clauses in the agreements – "the law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *CS-Lakeview at Gwinnett, Inc. v. Simon Property Group, Inc.*, 283 Ga. 426, 428 (659 SE2d 359) (2008).

As set forth in division 2, supra, the lack of any limit on the scope of the restricted work rendered the non-compete covenant considered by the trial court unenforceable under Georgia law, and Georgia law rejecting application of the "blue pencil" rule of severability rendered that covenant and two additional restrictive covenants unenforceable. These rulings enforced Georgia public policy with regard to restrictive covenants in employment agreements under the Georgia law applicable

18

to the agreements entered into prior to May 11, 2011. *White v. Fletcher/Mayo/Assoc., Inc.*, 251 Ga. 203, 204 (303 SE2d 746) (1983); *Hostetler v. Answerthink, Inc.*, 267 Ga. App. 325, 328 (599 SE2d 271) (2004); *Bunker Hill Intl., Ltd. v. Nationsbuilder Ins. Svcs., Inc.*, 309 Ga. App. 503, 508 (710 SE2d 662) (2011); *Convergys Corp. v. Keener*, 276 Ga. 808 (582 SE2d 84) (2003); *Holton*, 292 Ga. at 870 n. 4.

In support of their contention that the trial court should refuse to enforce the forum selection and choice of law clauses, Premium and Hess made the necessary showing that a Texas court would likely apply Texas law to enforce the covenants in a manner contrary to applicable Georgia public policy. *Carson*, 318 Ga. App. at 653. Generally, contractual choice of law clauses are enforced in Texas if the chosen state has a substantial relationship with the parties and their transaction, and no countervailing public policy of the forum demands otherwise. *SAVA Gumarska In Kemijska Indus. D. D. v. Advanced Polymer Sciences, Inc.*, 128 SE3d 304, 314 (Tex. App. Dallas 2004); *DeSantis v. Wackenhut Corp.*, 793 SW2d 670, 677-678 (Tex. 1990). In *DeSantis*, the Texas Supreme Court considered the enforceability of a Florida choice of law clause in a non-compete agreement between a Texas employee and a Florida employer. Id. at 675 The court found that Texas law controlling non-compete agreements expressed fundamental Texas public policy, and declined under

the circumstances to enforce the choice of Florida law in contravention of Texas law. Id. at 681. Considering Texas's relationship to the parties and the transaction in the present case, and that state's expressed interest in enforcing its own public policy controlling non-compete agreements, it is likely that a Texas court would enforce the choice of law clauses in the employment agreements and apply Texas law. Moreover, the application of Texas law would enforce the covenants in a manner contrary to Georgia public policy. Although a Texas court would likely agree with applicable Georgia law that the non-compete covenant considered by the trial court lacked a reasonable limit on the scope of restricted work (Tex. Bus. & Com. Code Ann. § 15.50; *Butler v. Arrow Mirror & Glass, Inc.*, 51 SW 3d 787, 794 (Tex. App. Hous. [1st Dist.] 2001); *Peat Marwick Main & Co. v. Haass*, 818 SW2d 381, 386-388 (Tex. 1991)), Texas law would, nevertheless, require that the covenant be reformed (or blue-penciled) to eliminate the unreasonable restriction and make the covenant enforceable. Tex. Bus & Co. Code Ann. § 15.51 (c); *Butler*, 51 SW3d at 794, 796. Because it is likely that a Texas court applying Texas law would enforce covenants in this case that are unenforceable under applicable Georgia law and public policy, the trial court did not err by refusing to enforce the forum selection and choice of law clauses and dismiss the complaint.

*Judgment affirmed in part and reversed in part. Dillard, J., concurs. McMillian, J., concurs in Divisions 1 and 2, and concurs in judgment only as to Division 3.*