**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 14, 2025**

# In the Court of Appeals of Georgia

A24A1726. BRITT v. DWYER
A24A1727. BRITT v. SAVANNAH SHARKS CHEERLEADING, LLC et al.

PIPKIN, Judge.

Appellant Stephanie Britt sued, among others, Appellees Savannah Sharks Cheerleading, Megan Anderson Yarbrough, and Meagan Dwyer. In two orders -- one involving Savannah Sharks and Yarbrough, and another involving Dwyer -- the trial court dismissed Britt's complaint against these parties pursuant to OCGA § 9-11-11.1, Georgia's anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute. Britt has separately appealed these orders, but we have consolidated these matters for the purpose of this opinion. As explained below, we affirm the trial court's conclusion that the anti-SLAPP motions were timely, as well as the trial court's denial of Britt's request for limited discovery; however, we also conclude that the trial court's anti-

SLAPP analysis was incomplete and, consequently, vacate the trial court's order in part and remand these matters for further proceedings.

1. When viewed in a light most favorable to Britt as the non-moving party, see *Equity Prime Mtg. v. Greene for Congress*, 366 Ga. App. 207, 208 (1) n.2 (880 SE2d 642) (2022), the record shows as follows. Britt has "been a cheerleading and dance coach, choreographer, and judge of cheer/dance events for 32 years." Sometime in 2000, she founded Cheer Savannah, a cheerleading program. More recently, US All Star Federation ("USASF") -- "a national competitive cheer organization" -- hired TNG Consulting "to investigate [Britt] for any violations of . . . the USASF's internal guidelines/code of conduct."[1] Following that investigation, a report was created; as a consequence of that report, Britt was placed on the "restricted/ineligible members" list maintained by USASF. This USASF designation "prohibits [Britt] entirely from participating in programs, functions or events sponsored, organized, or sanctioned by USASF or member organizations."[2] According to Britt, "this punishment" was

---

[1] TNG Consulting is a party to the action below but is not party to this appeal.

[2] Britt says that "the USASF list is publically available and generally associated with child predators" and that, consequently, she "is substantially hindered from working with children in any capacity based on public perception."

orchestrated by her competitors -- including Appellees Savannah Sharks Cheerleading and its principle, Yarbrough -- as well as Appellee Dwyer, a purported disgruntled parent.

Consequently, Britt sued the three parties, among others, alleging the following preliminary facts in her two-count complaint:

20. Defendant Yarbrough has been in the gym business for more than ten years and used everything she learned from [Britt] to model her own program. She has engaged in a vitriolic pattern of behavior against rival gyms and coaches, such as [Britt]. Defendant Yarbrough has also harassed Plaintiff through phone calls and text messages.

21. Upon information and belief, Defendant Yarbrough used her position at Savannah Sharks to coerce employees and "gym mothers" into harassing and injuring rival businesses and coaches, including [Britt].

22. Defendant Dwyer has registered her daughter at more than ten cheer gyms during the past 14 years between New York and Georgia, including one season at Cheer Savannah where Defendant Dwyer was a team mom. She engaged in harassing behavior towards these gyms which led to actions being taken against her, including a cease-and-desist letter from at least one of these gyms. She had no complaints about Plaintiff until the end of the season when her child had not reached her desired level of achievement. She is among the gym mothers who, acting at the direction of Defendant Yarbrough and Defendant Savannah Sharks, maliciously filed false and misleading reports to USASF which construed Plaintiff's love and nurturing of her athletes, such as hugging and providing encouraging pats, as predatory behavior.

23. Upon information and belief, Defendant Dwyer seeks to open her own gym and is pursuing this ban of Plaintiff to bolster her own gym and elevate the status of the gym where her daughter cheers.

24. Most recently, Defendant Dwyer harassed Plaintiff at a cheer event, physically shoving her phone into Plaintiff's face. Defendant Dwyer later contacted news outlets and falsely claimed Plaintiff was not allowed to attend events, even as a spectator, and that she was a threat to children.

25. This harassment has not been limited to just Plaintiff. Parents and coaches of Cheer Savannah are harassed at in-person events, which has led Cheer Savannah to withdraw from competitions for fear of being near Defendant Dwyer and Defendant Yarbrough.

. . . .

33. Upon information and belief, Defendant Yarbrough and Defendant Dwyer caused [TNG Consulting] to be supplied with false statements and assisted [TNG Consulting] in creating the report [to USASF].

34. USASF issued a decision banning Plaintiff for life based on the inaccurate findings of [TNG Consulting].

Turning to Britt's two legal claims, her complaint first asserts a claim for "Defamation, Libel, and Slander." In support of this claim, Britt alleges, in relevant part, that Yarbrough and Dwyer "made false statements concerning [Britt's]

4

interactions with the children she coaches and social media posts,[3] including statements given to [TNG Consulting]." She further alleges that Yarbrough "knew the statements were false, or in the alternative, showed reckless disregard for the veracity of the content of such statements." According to count one, the relevant parties "engaged in a civil conspiracy to damage [Britt]," with the "malicious [and] false allegations of Defendant Yarbrough and Defendant Dwyer" contributing to Britt's lifetime ban from the USASF.

In count two of the complaint, Britt asserts a claim for tortious interference with business relations. As to this claim, Britt asserts that "[t]he combined acts of [the d]efendants have tortiously interfered with [Britt's] right to pursue her chosen career" and that "[t]he wrongful acts of [the d]efendants have resulted in th[e] lifetime ban and have profoundly and negatively interfered with [Britt's] success in teaching and coaching."

---

[3] As to Britt's use of social media, the TNG Consulting report alleged that Britt had "filmed and publically shamed children who made mistakes, shamed and harassed parents who could not pay, and posted explicit content to TikTok."

The Appellees filed their respective answers,[4] and, as relevant here, each party moved to strike Britt's complaint in accordance with OCGA § 9-11-11.1. In their motion and memorandum in support, Savannah Sharks Cheerleading and Yarbrough contended that, putting aside the vagueness of Britt's complaint, the gravamen of her pleading seemed to be that she had been placed on USASF's restricted/ineligible list based on statements made by the various defendants. Savannah Sharks Cheerleading and Yarbrough argued, however, that the details about how Britt may have treated children -- which led to her placement on that list -- were "matters of public interest" as that phrase is used in OCGA § 9-11-11.1. The two parties further argued that neither of Britt's legal claims had any likelihood of success. In her filing, Dwyer made similar arguments. She noted that Britt is "a well-known figure in the cheerleading world" and that criticizing Britt -- and bringing to light her alleged child abuse -- were matters of public concern. Dwyer also argued that Britt's defamation claim had no merit and that her tortious interference claim was no better.

---

[4] Britt has amended her complaint a number of times. For the sake of clarifying the factual backdrop of this action, this opinion references facts alleged in the subsequent complaints, but the additional legal claims raised in those amended complaints concern only parties that are not involved in this appeal. That said, Appellees Savannah Sharks Cheerleading and Yarbrough nevertheless filed an amended answer in response.

In Britt's responses to the anti-SLAPP motions, she asserted that the motions were untimely, that any alleged comments made by the three defendants do "not qualify as speech on a matter of public concern," and, finally, that her complaint was sufficiently pleaded to survive a motion to dismiss. Later, Britt moved for limited discovery under OCGA § 9-11-11.1 -- to which the opposing parties objected -- and filed numerous affidavits from parents in support of her legal claims.[5]

---

[5] The various affidavits mainly pertain to Yarbrough, but the affidavits say that Dwyer told a parent that "Britt was a horrible person and that Cheer Savannah was a horrible place for children" and, also, that "Britt was stealing money that [was] paid to Cheer Savannah and was not spending it on [the] children." As to Yarbrough, the affidavits report, in small part, that she said as follows: that she "did not know why anyone would want their children around [Britt] because [Britt] got drunk in front of her when she was a child and would talk to her about her sex life when she was a minor"; that "Britt drank alcohol all the time and was drunk at cheerleading competitions"; that "Britt is not someone that children should be allowed around"; that "[Britt] and members of the Cheer Savannah coaching staff drank alcohol with underage athletes"; "that members of the Cheer Savannah coaching staff offered and did cocaine with athletes"; that "Britt cheats in cheerleading competitions"; that "Britt had no morals and values"; that "Britt exploits minor children," implying that such exploitation was sexual in nature; that "Britt was abusive to children"; that Britt had "grabb[ed] a child and le[ft] marks on an athlete's face"; and that Britt was "aggressive with athletes."

7

Following a hearing on the anti-SLAPP motions -- the transcript of which has not been transmitted to this Court[6] -- the trial court granted the respective motions in separate orders. When read together, the two orders deny Britt's request for discovery; determine that the anti-SLAPP motions were timely filed; exclude Britt's affidavits as untimely; conclude that the defendants' collective statements "about an adult's conduct around children who are under said adult's supervision are exercising their rights to free speech on matters of public concern pursuant to OCGA § 9-11-11.1 (c) (4)"; and, finally, determine that Britt had failed to show a probability of success on her claims for defamation and tortious interference.

Britt now appeals, arguing that the anti-SLAPP motions were untimely, that the trial court erroneously denied her motion for limited discovery, and that the trial court erred in granting the anti-SLAPP motions. We address each in turn.

2. First, Britt asserts on appeal, as she did below, that the anti-SLAPP motions were untimely because they were filed more than 90 days after service. Britt's

---

[6] There is no indication that the hearing was taken down. While "the failure to include an evidentiary transcript generally results in an appellate court affirming the trial court," *Ali v. ESA Mgmt.*, 357 Ga. App. 881, 882 (1) (850 SE2d 501) (2020), neither Appellee has raised this argument, and it is not at all clear whether the trial court received evidence at the hearing that is germane to this appeal.

8

timeliness argument is multifaceted, and we address each argument in turn. This argument is purely legal, and, thus, we review it de novo. See *Stewart Ausband Enterprises v. Holden*, 349 Ga. App. 295, 297 (1) (826 SE2d 138) (2019).

a. In its orders, the trial court concluded that the anti-SLAPP motions were timely because, under OCGA § 9-11-11.1 (h), a motion for attorney fees and expenses may be filed "*at any time during the course of the action* but not later than 45 days after the final disposition[.]" (Emphasis supplied) OCGA § 9-11-11.1 (h). On appeal, Britt asserts that the trial court's reliance on OCGA § 9-11-11.1 (h) was misplaced because, she says, that subsection speaks only to the timing of a motion for fees and expenses; alternatively, she says that absurd results will follow if subsection (h) indeed applies to the timing of an initial anti-SLAPP motion.

While Britt acknowledges on appeal that there is no express language in OCGA § 9-11-11.1 that dictates the timing of an initial anti-SLAPP motion and that resolving statutory questions such as this one may necessitate textual analysis -- such as considering the structure of a statute, or looking to similar statutes or statutory schemes -- Britt has wholly failed to engage in any statutory analysis to demonstrate that the trial court's ultimate conclusion is wrong. In short, she simply asserts,

without more, that the trial court's reliance on OCGA § 9-11-11.1 (h) was misplaced and, further, that reliance on OCGA § 9-11-11.1 leads to an absurd result; she fails to address the crux of her argument, namely, when an initial anti-SLAPP motion must be filed under OCGA § 911-11.1. "In order for this Court to correct errors of law, it is the duty of the appellant to show the existence of error, and in order to obtain reversal, he must show the error was harmful." *Ball v. Police Committee of City of Atlanta*, 136 Ga. App. 144, 145 (2) (220 SE2d 479) (1975). In the absence of any statutory or textual analysis, Britt cannot demonstrate error, and it is not the function of this Court to craft such an argument for her. See *Turner v. Flournoy*, 277 Ga. 683, 686 (2) (594 SE2d 359) (2004) ("It is not the function of this Court to advocate or advance positions not advanced by the parties. With rare exceptions, this Court, like all appellate courts, should decide the issues presented by the parties, as the parties present them.") (footnote omitted). Accordingly, this argument presents no basis for reversal.[7]

---

[7] We note that we have recently held that a four-month delay in filing an anti-SLAPP motion -- which is very similar to the time frame in this case -- was no ground for denying such a motion. See *PNC Financial Svcs. Group v. Gibson*, 371 Ga. App. 660, 663-664 (2) (b) (i) (A) (901 SE2d 331) (2024).

b. In support of her timeliness argument, Britt also points to *Land v. Boone*, 265 Ga. App. 551, 555 (b) (594 SE2d 741) (2004), a decision in which this Court explained that certain provisions of OCGA § 9-11-11.1 are analogous to OCGA § 9-11-12 (6). *Land*, 265 Ga. App. at 555 (b). Britt reasons that, since motions filed pursuant to OCGA § 9-11-12 (b) must be "made before or at the time of pleading," then it follows that motions made pursuant to OCGA § 9-11-11.1 must also be made within that same time frame. This argument fails for a number of reasons.

As a preliminary matter, and as Britt acknowledges on appeal, the decision in *Land* concerns a *former* version of OCGA § 9-11-11.1; the portions of OCGA § 9-11-11.1 about which *Land* is concerned -- namely certain certification and verification requirements -- are no longer included in the current version of OCGA § 9-11-11.1. See generally *Wilkes & McHugh v. LTC Consulting*, 306 Ga. 252 (2) (830 SE2d 119) (2019) (discussing changes to 2016 version of OCGA § 9-11-11.1). Thus, *Land* is inapplicable where, as here, the newer version of the statute controls.

Nevertheless, even if *Land* were controlling, Britt reads the decision much too broadly. Our decision in *Land* and similar cases merely compared OCGA § 9-11-11.1 with OCGA § 9-11-12 (b) for the limited purpose of explaining that motions made

under both statutes are, generally speaking, considered by means of a motion to dismiss or to strike rather than a motion for summary judgment. See, e.g., *Metzler v. Rowell*, 248 Ga. App. 596, 600 (3) (547 SE2d 311) (2001) (recognizing that the "threshold question of compliance with the anti-SLAPP [verification requirements] is decided on motion to dismiss or motion to strike," which, this Court explained, "is analogous to the statutory mechanism of OCGA § 9-11-12 (b), which provides that only motions under 12 (b) (6) for failure to state a claim *are converted to summary judgment*") (emphasis supplied and omitted). Accordingly, *Land* does not support Britt's argument here.[8]

c. Finally, Britt also claims that this Court should look to California law to establish a filing deadline for an initial anti-SLAPP motion to dismiss or strike under OCGA § 9-11-11.1. However, as the trial court and Appellees have correctly explained, the 60-day deadline imposed in California is a creature of *statute*. See CCCP § 425.16 (f).[9] While Georgia courts may look to California *precedent* for guidance when

---

[8] Because Britt has misconstrued our holding in *Land* and similar cases, we need not address her argument that the General Assembly implicitly adopted our holding in those cases when it revised OCGA § 9-11-11.1 effective 2016.

[9] Notably, while CCCP § 425.16 (h) includes a 60-day deadline, that statute *also* permits a later anti-SLAPP filing "in the court's discretion."

interpreting OCGA § 9-11-11.1, see *Wilkes & McHugh*, 306 Ga. at 257-258 (2), it does not follow that we may wholesale adopt the statute of that state. See *Modern Homes Const. v. Burke*, 219 Ga. 710, 715 (135 SE2d 383) (1964) ("In the dividing line of power between these co-ordinate branches we find here the boundary -- construction belongs to the courts, legislation to the legislature. We can not add a line to the law, nor can the legislature enlarge or diminish a law by construction.") (citation and punctuation omitted). Accordingly, this argument lacks merit.

3. Next, Britt contends that the trial court erred by denying her motion for discovery. We see no error.

On the morning of the hearing on the pending anti-SLAPP motions, Britt filed a motion for "limited discovery." The motion -- which is only a few sentences long -- asserts that, pursuant to OCGA § 9-11-11.1, discovery is available at the discretion of the trial court for good cause shown. Britt reasoned in her motion that, if the trial court was going to consider matters outside the pleadings, she was entitled to discovery since it had been stayed pending the resolution of the anti-SLAPP motions. The discovery motion was argued at the hearing -- again, there is no transcript of that hearing before this Court -- and the trial court ultimately denied the motion for limited

discovery, concluding that it was both untimely and, even if it was not, that Britt had failed to establish good cause.

On appeal, Britt raises a number of challenges to the trial court's ruling. She first argues that she is "entitled" to limited discovery under OCGA § 9-11-11.1 (b) (2) because there is a claim that she is a public figure. Britt's appellate brief also details why, in her estimation, limited discovery is necessary in this case, that is, why there is good cause. However, there is nothing in the record before this Court indicating that any of these arguments were raised below; indeed, Britt's brief on appeal acknowledges that her limited discovery "motion failed to specify what discovery was sought and how it would be sought." Accordingly, these arguments will not be considered on appeal, and Britt has not demonstrated that the denial of her motion for

limited discovery was error.[10] See *Lapolla Indus. v. Hess*, 325 Ga. App. 256, 261-262 (2) (750 SE2d 467) (2013) (arguments related to discovery will not be considered for the first time on appeal).

4. Finally, Britt contends that the trial court erroneously granted the anti-SLAPP motions. However, we need not reach this argument because, as outlined below, the trial court's anti-SLAPP analysis was incomplete; consequently, the trial court's order must be vacated, at least in part, and these matters must be remanded for further proceedings.

Georgia's anti-SLAPP statute provides as follows:

A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as *an act in furtherance of the person's or entity's right of petition or free speech under the*

---

[10] As explained above, the trial court provided alternative rationales for denying Britt's motion for limited discovery; because we may properly affirm on at least one rationale because it has not been properly preserved for appellate review, we need not address Britt's remaining argument that the trial court erroneously considered her discovery motion untimely. See *Prime Home Properties v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 701 (2) (660 SE2d 44) (2008) (explaining that this Court cannot address error raised on appeal where the trial court's judgment may be sustained on independent grounds). That said, given that Britt's motion was filed the day of the anti-SLAPP motion hearing -- which was nearly 4 months after the anti-SLAPP motions had been filed and was nearly 3 months after her response in which she indicated that she would be seeking limited discovery -- we cannot say that the trial court abused its discretion.

*Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern* shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

(Emphasis supplied.) OCGA § 9-11-11.1 (b) (1). As detailed in OCGA § 9-11-11.1 (c), the phrase an "'act in furtherance of the person's . . . right of petition or free speech . . . in connection with an issue of public interest or concern'" includes the following:

(1) Any written or oral statement or writing or petition made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) Any written or oral statement or writing or petition made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) Any written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or

(4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

Thus, when read as a whole, a motion filed under this provision

involves two steps. First, the court must decide whether the party filing the anti-SLAPP motion . . . has made a threshold showing that the challenged claim is one "arising from" protected activity. If so, the court

16

> must decide whether the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(Citations and punctuation omitted.) *Equity Prime Mtg.*, 366 Ga. App. at 211 (2). In this case, we are only concerned with the first step of the analysis. As to this first step,

> the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. A defendant meets its burden by demonstrating that the act underlying the challenged claim could reasonably be construed as fitting within one of the categories spelled out in subsection (c).

(Citation, punctuation, and emphasis omitted.) *Wilkes & McHugh*, 306 Ga. at 262 (2) (b).

In this case, as detailed above, Appellees have maintained that their alleged statements about Britt's treatment of and conduct around minors "involves an issue of public concern." Thus, it appears that the Appellees are asserting that Britt's claims could be reasonably construed as fitting within OCGA §§ 9-11-11.1 (c) (3) and (c) (4), and the trial court agreed. However, the mere fact that Britt's claims could conceivably involve statements made about matters of public concern does not, without more, satisfy those subdivisions. Instead, in accordance with the plain language of those provisions, Britt's claims must relate to a "written or oral statement or writing or petition *made in a place open to the public or a public forum* in connection

17

with an issue of public interest or concern" or to "*conduct* in furtherance of the exercise of the constitutional right of petition or free speech." (Emphasis supplied.) Id.

As we have explained before, "[t]he anti-SLAPP statute does not encompass all statements that touch upon matters of public concern." *Ga. Community Support & Solutions v. Berryhill*, 275 Ga. App. 189, 192 (1) (620 SE2d 178) (2005). Rather, the anti-SLAPP statute concerns only that which "could reasonably be construed as fitting within one of the categories spelled out in [OCGA § 9-11-11.1 (c)]." (Citation and punctuation omitted.) *Wilkes & McHugh*, 306 Ga. at 262 (2) (b). Here, Britt asserts that Appellees' defamatory conduct "was directed at and communicated solely with *private* individuals and entities." (Emphasis supplied.) And, while there are passing references in the record to disparaging statements made into a microphone in front of a crowd or to reports made to the news, neither Appellees nor the trial court have addressed the additional requirements included in OCGA §§ 9-11-11.1 (c) (3) and

(c) (4).[11] As such, the trial court's anti-SLAPP analysis was incomplete, and it must be revisited.

For the reasons explained above, the trial court's orders in these appeals are affirmed to the extent that those orders concluded that the anti-SLAPP motions filed in this case were timely and to the extent that those orders denied Britt's request for limited discovery. However, the trial court's orders are hereby vacated to the extent that those orders conclude that dismissal of Britt's action was warranted under OCGA § 9-11-11.1, and these matters are remanded for proceedings consistent with this opinion.[12]

*Judgments affirmed in part, vacated in part, and case remanded. Barnes, P. J., concurs. Gobeil, J., concurs fully as to Divisions 1, 2 (b), 2 (c), and 3. She concurs specially as to Division 4 and she concurs in judgment only as to Division 2 (a).*

---

[11] Likewise, to the extent that Appellees may rely on OCGA §§ 9-11-11.1 (c) (1) and (2) in support of their respective motions, the trial court must consider whether Appellees as defendants have demonstrated that Britt's claims involve a "written or oral statement or writing or petition" made in connection with "an official proceeding *authorized by law*." (Emphasis added.) Id.

[12] On remand, the trial court may, in its sole discretion, consider additional motions, conduct additional hearings, and/or receive additional evidence.

A24A1726.  BRITT v. DWYER.

A24A1727.  BRITT v. SAVANNAH SHARKS CHEERLEADING, LLC.

GOBEIL, Judge, concurring specially.

I concur fully with Divisions 1, 2 (b), 2 (c), and 3 of the majority's opinion. I concur in judgment only as to Division 2 (a). I also agree that remand is warranted.

I concur specially, however, with Division 4 of the majority opinion. In its orders, the trial court ruled that the statements at issue implicate an issue of public concern — the safety of youth in sports — and thus fit within OCGA § 9-11-11.1 (c) (4). I write separately merely because I would direct the trial court, upon remand, to consider the limited issue of whether the context in which the appellees' statements

were made amounts to "conduct in furtherance of the exercise of the constitutional right of petition or free speech" as set forth in OCGA § 9-11-11.1 (c) (4). See *Giraldi v. Bowen*, ___ Ga. App. ___, ___ (1) (b) (___ SE2d ___) (Case No. A24A1464, decided Feb. 13, 2025) (discussing factors that should be considered in evaluating whether a statement constitutes protected activity under OCGA § 9-11-11.1 (c) (4)).