A08A0348, A08A0349. ATLANTA BREAD COMPANY INTERNATIONAL, INC. v. LUPTON-SMITH et al.; and vice versa.
(663 SE2d 743)

JOHNSON, Presiding Judge.

Sean Lupton-Smith is the owner of Southlake Bread Company, LLC, Airport Bread Company, LLC, Concourse C Bread Company, LLC, Forsyth Bread Company, LLC, and Knoxville Bread Company (hereinafter "Smith"). These companies are each franchises of Atlanta Bread Company International, Inc. On February 14, 2006, Atlanta Bread Company served Smith with Notices of Termination of Franchise Agreement, with an effective date of February 24, 2006. These termination notices were served after Atlanta Bread Company discovered that Smith was operating a competing business, called PJ's Coffee and Lounge, using Atlanta Bread Company's methods and proprietary information. Smith filed a complaint seeking to enjoin the terminations and obtained a temporary restraining order. Subsequently the temporary restraining order was lifted and Atlanta Bread Company acquired the assets of the five stores from Smith for $840,000. Smith then amended his complaint to seek damages for alleged wrongful termination of the franchise agreements.

The issues at dispute in the case rested on certain restrictions included in the franchise agreements. Following a series of motions and cross-motions, the trial court entered partial summary judgment in favor of Smith, holding that Restriction 1 was unenforceable under a standard of strict scrutiny and that Restriction 1 could not be severed from a post-termination restrictive covenant in Restriction 2, which the court also held was unenforceable. The trial court denied Smith's motion for partial judgment on the pleadings as to

wrongful termination of the franchise agreements, and it denied Atlanta Bread Company's cross-motion for summary judgment.

In Case No. A08A0348, Atlanta Bread Company appeals, alleging the trial court erred in concluding that (1) a restriction on in-term competition contained in the franchise agreements was invalid on public policy grounds as a matter of law; (2) a geographic limitation is required as a matter of law and Restriction 1 was, therefore, overbroad and vague; and (3) there is a legal relationship between the putative invalidity of Restrictions 1 and 2. In Case No. A08A0349, Smith appeals, alleging the trial court erred in denying his motion for partial judgment on the pleadings with respect to his wrongful termination claim. These cases have been consolidated for appeal.

When deciding a motion for judgment on the pleadings, the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law.[1] In deciding a motion for summary judgment, the court will consider all matters properly of record to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law.[2] Whether the restraints imposed by a restrictive covenant are reasonable is a question of law for determination by the court.[3] A questionable restriction, if not void on its face, may require the introduction of additional facts to determine whether it is reasonable.[4]

The record here shows that Smith entered into franchise agreements with Atlanta Bread Company. The franchise agreements all contained substantially the same provisions in Section 13, titled "Confidentiality: Restrictions":

a. During the term of this Agreement, neither Franchisee nor any Principal Shareholder, for so long as such Principal Shareholder owns an Interest in Franchisee, may, without the prior written consent of Franchisor, directly or indirectly engage in, or acquire any financial or beneficial interest in (including any interest in corporations, partnerships, trusts, unincorporated associations or joint ventures), advise, help, guarantee loans or make loans to, any bakery/deli business whose method of operation is similar to that employed by store units within the System. [hereinafter "Restriction 1"]

[1] *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006).
[2] OCGA § 9-11-56 (c).
[3] *W. R. Grace & Co. v. Mouyal*, 262 Ga. 464, 465 (1) (422 SE2d 529) (1992).
[4] *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68, 69 (2) (274 SE2d 329) (1981).

b. Neither Franchisee, for one (1) year following the termination of this Agreement, nor any Principal Shareholder, for one (1) year following the termination of all of his or her Interest in Franchisee or the termination of this Agreement, whichever occurs first, may directly or indirectly engage in, or acquire any financial or beneficial interest in (including any interest in corporations, partnerships, trusts, unincorporated associations or joint ventures), advise, help, guarantee loans or make loans to, any bakery/deli business whose method of operation is similar to that employed by bakery/deli stores within the System which is located within a twenty (20) mile radius of any store unit within the System. [hereinafter "Restriction 2"]

c. Neither Franchisee nor any Shareholder shall at any time (i) appropriate or use the trade secrets incorporated in the System, or any portion thereof, in any business which is not within the System, (ii) disclose or reveal any portion of the System to any person, other than to Franchisee's Store employees as an incident of their training, . . . (iv) communicate, divulge or use for the benefit of any other person or entity any confidential information, knowledge or know-how concerning the methods of development or operation of a store utilizing the System, which may be communicated by Franchisor in connection with the franchise granted hereunder. [hereinafter "Restriction 3"]

The "System" is defined in the agreements as

a restaurant format and operating system, including a recognized design, decor, color scheme and style of building, uniform standards, specifications and procedures of operation, quality and uniformity of products and services offered, and procedures for inventory and management control.

In 2005, Atlanta Bread Company learned that Smith had opened a Boneheads seafood restaurant and did not object because it was not a bakery/deli with a method of operation similar to that of Atlanta Bread Company. Then, in January 2006, Atlanta Bread Company learned that Smith had opened PJ's Coffee & Lounge under a franchise agreement with PJ's Coffee USA, Inc. In an addendum to that franchise agreement, PJ's Coffee USA agreed to waive the franchise fee and to pay for certain build-out costs if Smith helped PJ's develop an operating manual for the PJ's Coffee & Lounge

concept. There is a great deal of dispute in this case regarding the similarities and differences between Atlanta Bread Company stores and PJ's Coffee & Lounge. However, we need not reach these factual issues in determining whether the trial court erred in finding the restrictive covenants unenforceable as a matter of law.

When Atlanta Bread Company learned that Smith had opened PJ's Coffee & Lounge and that he was offering similar food items offered by Atlanta Bread Company allegedly prepared using Atlanta Bread Company methods on much of the same equipment used in Atlanta Bread Company stores, Atlanta Bread Company sent Smith notices terminating his Atlanta Bread Company franchises. The termination notices served on Smith stated in relevant part:

> Atlanta Bread Company has terminated the Agreement . . . as a result of your conduct, which is in material breach of [Restrictions 1 and 3] of the Agreement. It has come to our attention that without the prior, written consent of Atlanta Bread Company, you are directly engaging in and are participating in the management and operation of PJ's Coffee and Lounge located at Atlantic Station, 232 19th St. NW, Suite 7100, Atlanta, Georgia, and that you have acquired a financial or beneficial interest in the same. This conduct is expressly prohibited by the Agreement, and constitutes a material breach thereof.

The ultimate questions to be decided are whether the trial court erred in finding the restrictive covenants unenforceable and whether the trial court erred in denying Smith's motion for judgment on the pleadings with respect to his wrongful termination claim. We find no error and affirm.

## Case No. A08A0348

1. Atlanta Bread Company contends the trial court erred in applying post-termination legal standards to conclude that a restriction on in-term competition contained in the franchise agreements was invalid on public policy grounds as a matter of law. We disagree and decline to extend Georgia law beyond what has previously been decided with respect to restrictive covenants. While the threat of a restrictive covenant regarding conduct during the term of a franchise agreement is not as great as a covenant regarding conduct following termination of the franchise agreement, it is still a restraint of trade and must be evaluated for reasonableness. The Supreme Court of Georgia has already contemplated the effect of removing the tests of reasonableness in a franchise agreement, and

it refused to take that action.[5] We, likewise, refuse to take that action in the present case.

In 1990, the Georgia General Assembly enacted OCGA § 13-8-2.1, which provided that any restriction that operated during the term of a franchise agreement could not be considered unreasonable because it lacked specific limitations upon scope of activity, duration, or territory, as long as it protected the subject matter of the agreement. This Code section, however, was held to be unconstitutional in its entirety because it required courts to enforce contracts restraining trade, in violation of the Georgia Constitution.[6] Following this precedent, we decline to enforce a franchise agreement restrictive covenant, even an in-term covenant, restraining trade unless that restrictive covenant meets the reasonableness standards promulgated in Georgia.

2. Atlanta Bread Company asserts the trial court erred, even under post-termination legal standards, in holding that a geographic limitation is required as a matter of law and by holding that the scope of Restriction 1 was both impermissibly vague and overbroad. This enumeration of error lacks merit.

It is clear that Restriction 1 operates as a restrictive covenant against competition. Such a restraint is in partial restraint of trade, and this Court has previously held that a restrictive covenant against competition within a franchise agreement must be strictly limited in duration and territory and narrowly drawn to protect the legitimate business interests of the franchisor.[7] This is a question of law for the court based upon the wording of the covenant.[8] A covenant not to compete must be limited as to territory or it will be invalidated.[9] In addition, a covenant not to compete is also unreasonable where the nature of the business activities in which the employee or franchisee is forbidden to engage is not specified with particularity.[10] Contrary to Atlanta Bread Company's argument, a covenant not to compete in a franchise agreement is analogous to a covenant not to compete in an employment contract, and the same measure of reasonableness is applied to both contracts.[11]

---

[5] See *Jackson & Coker, Inc. v. Hart*, 261 Ga. 371 (405 SE2d 253) (1991).

[6] *Jackson & Coker*, supra.

[7] See *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 538 (5) (484 SE2d 259) (1997).

[8] See *New Atlanta Ear, Nose & Throat Assoc. v. Pratt*, 253 Ga. App. 681, 685 (1) (b) (560 SE2d 268) (2002).

[9] See *Sunstates Refrigerated Svcs. v. Griffin*, 215 Ga. App. 61, 63 (2) (449 SE2d 858) (1994).

[10] See *Howard Schultz &c., Inc. v. Broniec*, 239 Ga. 181, 184 (2) (236 SE2d 265) (1977).

[11] See *Watson v. Waffle House*, 253 Ga. 671, 672 (2) (324 SE2d 175) (1985).

In the present case, Restriction 1 does more than prevent Smith from operating a bakery/deli, as argued by Atlanta Bread Company. The provision contains no territorial limitation, prevents Smith from engaging in any capacity within the bakery/deli business, and fails to specify the restricted activities with sufficient particularity. "Bakery/deli business" is not defined in the franchise agreement. Under Atlanta Bread Company's definition, any business operation that bakes or sells baked goods or sells cooked meats and prepared salads would be prohibited. In addition, the restrictive covenants prohibit Smith from acquiring any interest, advising, or engaging in any bakery/deli business whose method of operation "is similar" to that of the "System." If Smith were to own an interest in a coffee shop that sold baked goods purchased from an unrelated supplier, in an area where Atlanta Bread Company did not compete, Smith would still be in violation of Restriction 1. Likewise, if Smith were to take a position of janitor in a deli, he also would be in violation of Restriction 1.

Here, because Restriction 1 fails to specify with any particularity the nature and kind of business which is or will be competitive with Atlanta Bread Company and because the Restriction fails to specify with particularity the nature of the business activities in which Smith is forbidden to engage, the covenant is unreasonable.[12] It imposes a greater limitation on a franchisee than is necessary for the protection of the franchisor.[13] In addition, "[r]egardless of the level of scrutiny we apply, the lack of a territorial restriction renders [the covenant at issue here] unenforceable."[14] We find the covenant in restraint of trade in this case, when read in its entirety, to be vague and overly broad. The trial court did not err in finding Restriction 1 unenforceable.

3. Atlanta Bread Company contends the trial court erred in finding a legal relationship between the putative invalidity of Restrictions 1 and 2. We disagree. Georgia does not allow the blue-pencil doctrine of severability.[15] "Unlike a noncompetition agreement entered into in connection with the sale of a business, one entered into in connection with a franchise contract cannot be 'blue-penciled' by the courts to enforce valid terms if some terms of the covenant are invalid."[16] Therefore, if one provision of a covenant

---

[12] See *Howard Schultz &c., Inc.*, supra at 184-185 (2).

[13] See *Northside Hosp. v. McCord*, 245 Ga. App. 245, 249 (3) (537 SE2d 697) (2000).

[14] *New Atlanta Ear, Nose & Throat Assoc.*, supra at 687 (2); see also *Barrett-Walls, Inc. v. T. V. Venture*, 242 Ga. 816, 819 (251 SE2d 558) (1979).

[15] See *Advance Technology Consultants v. RoadTrac*, 250 Ga. App. 317, 320-321 (2) (551 SE2d 735) (2001).

[16] *Allen*, supra.

not to compete is found to be unenforceable, the entire covenant will be struck down.[17]

Moreover, Restriction 2 is unreasonable as a matter of law because it contains "shifting and expanding" territorial restrictions.[18] "[A] territorial restriction which cannot be determined until the date of the [franchisee's] termination is too indefinite to be enforced. . . . [The franchisee must be] able to forecast with certainty the territorial extent of the duty owing."[19] If the covenant's language allows territories to be added during the course of the agreement, the covenant is unenforceable.[20] Here, the covenant at issue restricts the franchisee from certain actions "within the System which is located within a twenty (20) mile radius of any store unit within the System." This language allows the 20-mile radius of prohibited territory to shift and/or expand during the course of the agreement as new stores are potentially added to the System. The covenant falls squarely within the holding of *Koger Properties*[21] and its progeny invalidating territorial restrictions that change or expand during the course of the agreement.[22] The trial court did not err in finding Restriction 2 unenforceable.

## Case No. A08A0349

4. Smith contends the trial court erred in denying his motion for partial judgment on the pleadings with respect to his wrongful termination claim. We find no error.

Restriction 3 is a nondisclosure clause, and its reasonableness turns on the duration and the nature of the business interests Atlanta Bread Company seeks to protect.[23] A nondisclosure clause with no time limitation, as here, is unenforceable as to information that is not a trade secret.[24] Restriction 3, therefore, is enforceable only with respect to information meeting the definition of a trade secret:

> "Trade secret" means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a

---

[17] See *Barrett-Walls*, supra at 820; *Watson*, supra; see generally *Hilb, Rogal & Hamilton Co. v. Holley*, 284 Ga. App. 591, 596 (1) (644 SE2d 862) (2007).

[18] See *New Atlanta Ear, Nose & Throat Assoc.*, supra at 685 (1) (b).

[19] (Citation and punctuation omitted.) *Koger Properties*, supra at 68 (1).

[20] *New Atlanta Ear, Nose & Throat Assoc.*, supra.

[21] Supra.

[22] *New Atlanta Ear, Nose & Throat Assoc.*, supra at 686 (1) (b).

[23] See *Sunstates*, supra.

[24] *Allen*, supra at 539 (6).

method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

(A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[25]

Under Georgia law, if Smith disclosed or utilized information constituting a trade secret, he has materially breached the franchise agreement. However, based on the record as it now stands, there are questions of material fact concerning whether Smith disclosed trade secrets and whether Atlanta Bread Company wrongfully terminated the franchise agreement because of Smith's alleged disclosures.

The record shows that the parties hotly dispute the similarities and differences between Atlanta Bread Company stores and PJ's Coffee & Lounge. In addition, the record shows that during the time that Smith prepared to open PJ's Coffee & Lounge, he trained his employees in Atlanta Bread Company methods of operation in his Atlanta Bread Company stores in order to teach them how to operate PJ's Coffee & Lounge. Whether Smith disclosed Atlanta Bread Company trade secrets and violated his contractual duties in the franchise agreement is a question of fact for the jury to determine, and the trial court did not err in denying Smith's motion for judgment on the pleadings. Contrary to Smith's argument, Atlanta Bread Company is not raising a new claim for misappropriation of trade secrets, but is merely claiming that Smith breached Restriction 3 in the franchise agreement.

*Judgments affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED JUNE 4, 2008 —
RECONSIDERATION DENIED JUNE 18, 2008 — 

*McGuire Woods, Milo S. Cogan, Timothy H. Kratz, Jones Day, Lucas W. Andrews*, for appellant.

*Kilpatrick Stockton, R. Randy Edwards, Drew D. Baiter*, for appellee.

---

[25] OCGA § 10-1-761 (4).

*Paul, Hastings, Janofsky & Walker, William K. Whitner, Noelle Lagueux-Alverez*, amici curiae.