**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 20, 2014**

# In the Court of Appeals of Georgia

A14A1235. HOLLAND INSURANCE GROUP, LLC et al v. SENIOR LIFE INSURANCE COMPANY.

RAY, Judge.

William Holland and Senior Life Insurance Company ("Senior Life") entered into an agreement ("Agreement") authorizing Holland to sell Senior Life's insurance products as an independent agent. Senior Life subsequently terminated the Agreement and notified Holland that it "suspended" payment of commissions to Holland pending an investigation of whether Holland had violated restrictive covenants contained in the Agreement. Holland then filed a complaint against Senior Life seeking injunctive relief and a declaratory judgment that the Agreement's restrictive covenants are overbroad and thus, unenforceable.[1] Holland filed a motion for judgment on the

---

[1] Other plaintiffs in the suit include Holland Insurance Group, LLC and Global Premier Benefits, LLC. They were not parties to the Agreement.

pleadings, which the trial court denied. Senior Life then filed an amended counterclaim seeking enforcement of the forfeiture provisions of the agreement based on Holland's alleged violation of restrictive covenants. Senior Life then sought a preliminary injunction for the return of all confidential documents, including completed insurance applications and "Leads" (information regarding prospective clients). Senior Life also sought to enjoin Holland and his sub-agents from using and distributing such information after the termination of the Agreement. The trial court granted that motion. Holland appeals from both of the trial court's rulings.[2] For the reasons below, we affirm in part and reverse in part.

1. Holland's motion for judgment on the pleadings sought a declaratory judgment that: "(1) the non-solicitation and confidentiality provisions of the [Agreement] are unenforceable as a matter of law; and (2) the liquidated damages of the [Agreement] are void[.]" The motion also sought "a permanent injunction preventing Senior Life from attempting to enforce such provisions" and asked the

_____

[2] See *Pittman v. Harbin Clinic Professional Assn.*, 263 Ga. 66, 66-67 (428 SE2d 328) (1993) (per curiam) (holding that Court of Appeals had jurisdiction when, "[a]lthough the parties sought equitable relief, both the orders enjoining the partners from violating their contracts and the orders denying the injunctive relief were secondary to the principal issue of the construction of the contacts - an issue of law") (citation omitted).

trial court to order Senior Life to pay Holland all commissions that he is owed under the Agreement. After a hearing, the trial court denied the motion in a single sentence.

On appeal, Holland argues that the trial court erred in denying the motion for judgment on the pleadings because the Agreement contains several restrictive covenants that are overbroad and, thus, unenforceable and invalid under *A. L. Williams & Assocs. v. Faircloth*, 259 Ga. 767 (386 SE2d 151) (1989).[3] In *A. L. Williams*, our Supreme Court held that "[i]t would be paradoxical to strike down a covenant as invalid, and at the same time uphold a forfeiture that is conditioned upon a violation of that very covenant. Hence, a forfeiture provision that is conditioned expressly upon an invalid covenant must be invalid *in se*." Id. at 768 (1) (b).

A motion for judgment on the pleadings is proper

where the undisputed facts that appear from the pleadings establish that the movant is entitled to judgment as a matter of law. All well-pleaded facts are to be accepted as true. However, the trial court is not required

---

[3] Holland argues in his appellate brief that Sections 2.1 (j), 5.4, 7.4, 7.8 and 7.10 of the Agreement are overly broad and unenforceable. However, an examination of the appellate record fails to disclose that Holland presented these arguments before the trial court. Although the trial court's order notes that a hearing was held, there is no transcript in our appellate record. Issues not raised and ruled upon in the court below cannot be raised in this Court for the first time on appeal. *Trop, Inc. v. City of Brookhaven*, __ Ga. __ (3) (Case No. S14A0931, decided October 6, 2014). Thus, the enforceability of these particular sections is not properly before this Court.

to adopt a party's legal conclusions based on those facts. In other words, the granting of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. In considering a motion for judgment on the pleadings, a trial court may consider exhibits attached to and incorporated into the pleadings, including exhibits attached to the complaint or the answer.

(Citations and punctuation omitted.) *Lapolla Industries, Inc. v. Hess*, 325 Ga. App. 256, 252 (2) (750 SE2d 467) (2013). See also *Cardin v. Outdoor East*, 220 Ga. App. 664, 665 (468 SE2d 31) (1996) (The grant of a motion for judgment on the pleadings is proper only where the allegations disclose with certainty that the opposing party would not be entitled to judgment under any state of provable facts).

Accordingly, in deciding whether Holland is entitled to judgment on the pleadings, the trial court must accept Senior Life's well-pleaded allegations. See *Kwickie/Flash Foods, Inc. v. Lakeside Petroleum, Inc.*, 246 Ga. App. 729, 729 (541 SE2d 699) (2000). The pleadings allege that Senior Life and Holland entered into the Agreement by which Senior Life appointed Holland as an independent agent and representative of Senior Life for the purposes of soliciting and selling life insurance policies. Under the Agreement, Senior Life agreed to pay Holland "commissions and fees based on premiums received by [Senior Life] with respect to [Senior Life]

4

insurance policies issued and placed into force from applications solicited by or through [Holland] or [Holland's] [s]ub-agent[s]." The Agreement was in effect from July 29, 2002 , until June 15, 2011, when Senior Life terminated the contract. Senior Life's answer also contends that Holland "has violated one or more of the terms of the [Agreement]; consequently, he has forfeited all rights to renewal commissions pursuant to Section 5.7" and "Holland has induced or assisted in inducing a Senior Life policyholder to surrender, lapse, relinquish. . . or otherwise reduce a policy in value by use of non-forfeiture benefits; [and] consequently, he has forfeited his right to renewal commissions pursuant to Section 7.10" of the Agreement. (Punctuation omitted.)

Holland contends that the trial court erred in denying his motion for judgment on the pleadings on the grounds that restrictive covenants, nondisclosure provisions, and forfeiture provisions of the Agreement are unreasonable, invalid and unenforceable. The reasonableness of a restrictive covenant is a question of law, which we review de novo. (Punctuation and footnote omitted.) *Murphree v. Yancey Bros. Co.*, 311 Ga. App. 744, 747 (716 SE2d 824) (2011). "[R]estrictive covenants that are ancillary to employment contracts receive strict scrutiny, and are not blue-penciled. This is because it is generally true in an employer/employee relationship

5

that the employee goes into a transaction such as this at a great bargaining disadvantage and does so in exchange for the opportunity to [be employed]."[4] (Punctuation and footnotes omitted.) Id. However, the Agreement contains a severability clause.[5] "Void restrictive covenants, which cannot be blue-penciled out of the contract, do not void the entire contract when the contract contains a severability clause[.]" (Citations omitted.) *Capricorn Systems, Inc. v. Pednekar*, 248 Ga. App. 424, 428 (2) (d) (546 SE2d 554) (2001). Accord *Johnstone v. Tom's Amusement Co., Inc.*, 228 Ga. App. 296, 297-298 (1) (491 SE2d 394) (1997).

(a) Holland first contends that Section 5.5 of the Agreement, titled "Confidentiality," is overly broad. That provision provides, in relevant part, that "[u]ntil this Agreement terminates and at all times thereafter, you will hold in the strictest confidence and not use in any manner detrimental to us, or disclose, publish,

---

[4] We note that in 2011 the Georgia General Assembly amended OCGA § 13-8-53 to permit blue-penciling, providing that "a court may modify a covenant that is otherwise void and unenforceable so long as the modification does not render the covenant more restrictive with regard to the employee than as originally drafted by the parties." OCGA § 13-8-53 (d). However, the amended Code only applies to contracts entered into on or after May 11, 2011. *Lapolla*, supra at 262 (2), n. 4.

[5] Section 9.6 of the Agreement, titled "Severability[,]" provides that "[t]he provisions of this Agreement shall be deemed independent and severable, and the invalidity or partial invalidity or unenforceability of any one provision shall not affect the validity or enforceability of the remainder of this Agreement."

6

or divulge, directly or indirectly, to any individual or entity any Confidential and Proprietary Information[.]" Section 5.5 defines "Confidential Proprietary Information" as

> certain confidential and proprietary information relating to our business, including, but not limited to, certain lists of or data relating to our Customers and Prospective Customers. . . and certain other information relating to our services, marketing techniques, business methods or finances, which information is generally not known to the public. . . . [Senior Life] take[s] all reasonable steps necessary to ensure that each and every component of the Confidential and Proprietary Information constitutes a "Trade Secret."

Holland contends that the "Confidential and Proprietary Information" defined in Section 5.5 does not constitute a trade secret and, thus, that the confidentiality covenant is void because it does not contain a time limit.

> The validity of a non-disclosure provision depends upon its reasonableness, which, in turn, hinges on two factors: (1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets, methods of operation, names of customers, personnel data, and so on; and (2) whether the restraint is reasonably related to the protection of the information.

(Footnote omitted.) *Physician Specialists in Anesthesia, P. C. v. MacNeill*, 246 Ga. App. 398, 407-408 (7) (539 SE2d 216) (2000). "A nondisclosure clause with no time limit is unenforceable as to information that is not a trade secret." (Citation omitted.) *Allen v. Hub Cab Heaven, Inc.*, 225 Ga. App. 533, 539 (6) (484 SE2d 259) (1997). Accord *Carson v. Obor Holding Co., LLC,* 318 Ga. App. 645, 649-650 (1) (a) (734 SE2d 477) (2012). It is undisputed that Section 5.5 of the Agreement contains no time limitation; thus, whether or not Section 5.5 is overly broad and unenforceable hinges upon whether the "Confidential and Proprietary Information" it prohibits disclosing constitutes a trade secret.

OCGA § 10-1-761 (4) defines a "Trade Secret" as "information, without regard to form, including, but not limited to, technical or non-technical data, . . . a method, a technique, . . . financial data, financial plans, product plans, *or a list of potential customers or suppliers which is not commonly known by or available to the public. . ."* (Emphasis supplied.) Although "a client list may be subject to confidential treatment under the Georgia Trade Secrets Act, the information itself is not inherently confidential." (Citations and punctuation omitted.) *Crews v. Roger Wahl CPA, P. C.*, 238 Ga. App. 892, 898, n. 4 (520 SE2d 727) (1999). This is because "[c]ustomers are not trade secrets. Confidentiality is afforded only where the customer list is not

8

generally known or ascertainable from other sources and was the subject of reasonable efforts to maintain its secrecy." (Citations omitted.) Id.

In *Physician Specialists in Anesthesia, P. C.*, supra, this Court held that a fact question precluded summary judgment on plaintiff's argument that a nondisclosure covenant was unenforceably overbroad because "the legitimacy of the need to maintain the confidentiality of such information is a question of fact whose resolution is for the court below." (Punctuation and footnote omitted.) Id. at 408 (7). Similarly, here, we cannot conclude as a matter of law that the "Confidential and Proprietary Information" defined in Section 5.5 of the Agreement does not constitute a trade secret. Additional facts beyond those set forth in the relevant pleadings are needed to determine whether the information defined as Senior Life's "Confidential and Proprietary Information" is a legitimate trade secret or merely confidential information relating to its business. Compare *Equifax Svcs, Inc. v. Examination Mgmt. Svcs, Inc.*, 216 Ga. App. 35, 37 (1) (a) (453 SE2d 488) (1994) (finding that a confidentiality agreement prohibiting a former employee from disclosing "any confidential information" at any time after the conclusion of his employment was overbroad when such confidential information was not included in the confidentiality agreement's definition of "trade secret"). See also *Atlanta Bread Co. Intl., Inc. v.*

*Lupton-Smith*, 292 Ga. App. 14, 15 (663 SE2d 743) (2008) ("Whether the restraints imposed by a restrictive covenant are reasonable is a question of law for determination by the court. [However,] [a] questionable restriction, if not void on its face, may require the introduction of additional facts to determine whether it is reasonable") (footnotes omitted). As additional facts beyond those set forth in the pleadings are needed to make this determination, we find no error in the trial court's denial of Holland's motion for judgment on the pleadings as to this provision.

(b) Holland next contends that Section 5.7 of the Agreement, titled "General Remedies and Damages," is unenforceable because the section includes an overbroad noncompete clause. We agree.

Section 5.7 provides a "formula" for determining liquidated damages as well as other damages that could be imposed if it is found that Holland violated "the terms of this Agreement[.]" That section further includes the following non-compete clause:

> [n]otwithstanding our proprietary interest in our Customers and Prospective Customers, we recognize that upon termination of this Agreement, certain of our Customers may choose to sever their respective relationship with us in favor of you or any person engaging you after the termination of this Agreement, *without any direct or indirect solicitation by you in violation of the terms of this Agreement.* As such, . . . you hereby agree that, with respect to any Customer of ours

10

who completely or partially severs his/her relationship with us in favor of you . . . you shall pay us an amount equal to 100% of the commissions you earned (whether accrued or actually received) from us with respect to the Severing Customer during the twenty-four (24) month period immediately preceding the termination of this Agreement.

(Emphasis supplied.)

Generally, a restrictive covenant "may not validly preclude the employee from accepting unsolicited business from customers of his former employer." *Vulcan Steel Structures, Inc. v. McCarty*, __ Ga. App. __ (1) (Case No. A14A0803, decided October 6, 2014). An employer may properly protect itself from the risk that a former employee "might appropriate its customers by taking unfair advantage of client contacts developed while working for that employer, but the company cannot prevent [the employee] from merely accepting overtures from those customers." (Citation and punctuation omitted.) Id. Thus, because the plain language of Section 5.7 penalizes Holland from accepting the unsolicited business from Senior Life's former clients, regardless of who initiated the contact, it is unreasonable and unenforceable. Id. Accord *Waldeck v. Curtis 1000, Inc,* 261 Ga. App. 590, 590-593 (583 SE2d 266) (2003) (covenant prohibiting former employee from "actually effect[ing] the sale to any Customer Account of, or accept[ing] any offer from any Customer Account for,

11

any product that is one of the [former employer's] [p]roducts or that is substantially similar to or competitive with any of the [former employer's] [p]roducts" was unreasonable because it prohibited former employee from merely accepting business without any solicitation); *Dougherty, McKinnon & Luby, P. C. v. Greenwald, Denzik & Davis, P. C.*, 213 Ga. App. 891, 892-893 (447 SE2d 94) (1994) (finding that employment agreement requiring employee to pay liquidated damages upon termination of his employment constituted a covenant not to compete. Even though the agreement contemplated the possibility that employee would leave, the "legal effect" of the liquidated damages provision was that of a noncompete agreement).

Because the Agreement contains a severability clause, the void restrictive covenant in Section 5.7 does not void the entire contract. See *Capricorn Systems, Inc.,* supra at 428 (2) (d). Thus, the other contract terms survive the void terms of Section 5.7. However, the invalid restrictive covenant cannot be excised from Section 5.7 so as to preserve the liquidated damages provision also contained therein. See *Johnstone,* supra at 298. Accordingly, we find that the trial court erred in denying Holland's motion for judgment on the pleadings as it relates to the liquidated damages provision in Section 5.7.

2. Holland next contends that the trial court erred in granting Senior Life's motion for preliminary injunction. We disagree.

Senior Life applied for a motion for preliminary injunction seeking an order requiring Holland to return Senior Life's "'leads,' marketing materials and insurance applications," and enjoining Holland and his sub-agents from using and distributing such information. The trial court granted Senior Life's motion and ordered Holland to return the "Leads" and insurance applications to Senior Life.

When determining whether to issue an interlocutory injunction, the trial court must consider whether

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting an interlocutory injunction will not disserve the public interest.

(Citation and footnote omitted.) *SRB Investment Svcs., LLLP v. Branch Banking &Co.*, 289 Ga. 1, 5 (3) (709 SE2d 267) (2011). Even though an interlocutory injunction is an "extraordinary remedy, and the power to grant it must be prudently and cautiously exercised, the trial court is vested with broad discretion in making that

13

decision." (Citation omitted.) Id. Where, as here, the facts are in dispute, this Court will reverse the trial court's ruling "only in the event of *manifest* abuse of discretion." (Punctuation and footnote omitted; emphasis in original.) *Lowe's Home Centers, Inc. v. Garrison Ridge Shopping Center Marietta, Ga., L. P.*, 283 Ga. App. 854, 855 (643 SE2d 288) (2007).

During the course of the Agreement, Holland would periodically obtain "Leads" from Senior Life by selecting a zip code he wished to target and submitting an order for "Leads" to Senior Life. Senior Life would then design a marketing pamphlet and contract with another company to print and mail the pamphlet to prospective customers in the targeted geographic area. The pamphlet contained a pre-paid postcard that could be detached by an interested customer and mailed back to a post office box maintained by Holland. The printing company billed Senior Life directly for its services. Senior Life would recoup the cost of providing "Leads" from Holland. Holland would then sell and distribute the "Leads" to his sub-agents for the purpose of soliciting business.

Several provisions of the Agreement govern Holland's use of the "leads." Section 2.1 of the Agreement provides that Holland "shall maintain accurate records and documentation regarding any 'Leads' (i.e., names of [Senior Life's] Customers

14

or Prospective Customers) that you receive from us or any other source." Section 5.5 of the Agreement stated that Holland "recognize[s] that [Senior Life] devote[s] significant financial, human, and other resources to the development of our customer base, "Leads," and the general goodwill associated with our business[,]" and that the "Leads" constitute "Confidential and Proprietary Information" of Senior Life. Section 5.2 of the Agreement, titled "Marketing Materials and Procedures," provides that Senior Life's "name, product title, logos, trademarks and other advertising materials are and at all times shall remain" the property of Senior Life, and Holland "shall not use any materials in any manner which has not been approved in writing" by Senior Life. Section 5.2 further states that "Upon termination of this Agreement, [Holland] *shall return*, and [Holland] *shall cause [his] Sub-agents to return*, all . . . marketing and other materials" provided by Senior Life. (Emphasis supplied.) Section 5.5 (b) provides that "Upon our request, . . . or within thirty (30) days following . . . termination, [Holland] will deliver to [Senior Life] only and shall not retain for [Holland's] or anybody else's use, any and all 'Leads,' records, files . . . and materials of any type . . . containing any Confidential and Proprietary Information."

Senior Life's Senior Vice-President, Nicholas Murray, testified via affidavit that after Senior Life terminated its Agreement with Holland, Holland refused to

15

return Senior Life's materials, including its "Leads" and insurance applications completed by prospective customers. Murray further stated that Senior Life had received information that Holland continued to use the "Leads" after the termination of the Agreement, and had given and sold used "Leads" to his sub-agents so that they would make sales calls for insurers other than Senior Life. Senior Life identified several of its former policyholders that Holland had successfully switched to other life insurers as a result of using the contact information on Senior Life "Leads." Senior Life further discovered that Holland allowed his agents and sub-agents to use the Senior Life "Leads" to switch Senior Life policyholders to other insurers and "cross-sell" Medicare Advantage products. Holland's sub-agent persuaded a former Senior Life policyholder to switch her life insurance from Senior Life by falsely telling the policyholder that Senior Life was going out of business. Senior Life also obtained information that Holland did not keep the "Leads" and insurance applications locked in a file cabinet, but rather left them in boxes on a table in his office so that sub-agents could inspect them. After the termination of his Agreement, Holland refused to return the "Leads" and informed Senior Life that he no longer had possession of such records. Without providing any citation to the record, Holland asserts that, contrary to Murray's testimony, the leads in this matter are not "Senior

16

Life Leads," but rather, that Holland purchased the leads from the printing company himself.

After a hearing, the trial court granted Senior Life's motion for a preliminary injunction. We find no merit in Holland's assertion that the trial court abused its discretion in granting the preliminary injunction and ordering Holland to return all "Leads" obtained through Senior Life or the printing company during the time the Agreement was in force, as well as all insurance applications that were submitted to Senior Life.

The trial court held that it was "extremely likely" that Senior Life would prevail at trial on its claims that Holland breached the portions of the Agreement requiring Holland to return the "Leads" and other confidential and proprietary documents to Senior Life. Such a finding was not a manifest abuse of discretion where Holland does not dispute the validity of these provisions, and, as discussed above, the Agreement contains a severability clause. See *Lee v. Environmental Pest & Termite Control, Inc.*, 271 Ga. 371, 373-374 (2) (516 SE2d 76) (1999) (upholding trial court's grant of interlocutory injunction prohibiting former employee from providing pest control services to customers he contacted or learned about during the

time he was employed, even when his employment agreement did not contain a non-competition restrictive covenant, but did contain a confidentiality agreement).

We further find no manifest abuse of discretion in the trial court's finding that Senior Life will suffer irreparable injury unless Holland is restrained from using Senior Life's "Leads" and insurance applications, and that an injunction serves the public interest. Holland has presented evidence that Senior Life did not enforce its policy of requesting all materials to be returned when other Senior Life employment agreements were terminated, and that there was a delay between the termination of the Agreement and Senior Life filing the motion for preliminary injunction. However, in the present case, Senior Life alleges that it has learned through discovery that Holland and his sub-agents falsified insurance applications in order to hide the replacement of Senior Life policies, engaged in the illegal process of "switching" and "cross-selling," and lied to current policy holders by informing them Senior Life was going out of business. See *Parker v. Clary Lakes Recreation Assoc., Inc.* 272 Ga. 44, 44 (526 SE2d 838) (2000) ("a demonstration of irreparable injury is not an absolute prerequisite to interlocutory injunctive relief") (citations omitted).

Holland next argues that the preliminary injunction should be reversed because Senior Life has an adequate remedy at law. See, e. g., *Allen*, supra at 540 (8) ("[I]t is

18

error to grant an injunction when the party seeking it has an adequate remedy at law") (citation omitted). Senior Life argues that it would suffer significant harm beyond the threat of lost business and customers had the trial court not granted its motion. It contends that Holland's continued use of the copied Senior Life insurance applications could potentially expose Senior Life to regulatory sanctions and other damages for violating the privacy rights of its applicants, since the applications contain sensitive data such as the applicant's birthday, social security number, health history, and banking information. After reviewing the record, we conclude that the trial court was authorized to find that the "harm to [Senior Life] arising from [or by] Mr. Holland's continued possession and use of . . . 'leads,' insurance applications, and expirations outweighs any possible harm that Mr. Holland may suffer from losing possession of such documents and files." Therefore, the trial court acted within its broad discretion in granting interlocutory relief. See *Lee*, supra at 373-374 (2).

*Judgment affirmed in part and reversed in part. Andrews, P. J., and McFadden, J., concur*.