**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 13, 2026**

# In the Court of Appeals of Georgia

A25A1559. MOTORSPORTS OF CONYERS, LLC et al. v.
  BURBACH.

DOYLE, Presiding Judge.

In this action seeking to enforce employment-related covenants made with defendant Edmund Burbach, plaintiffs Motorsports of Conyers, LLC d/b/a Falcons Fury Harley-Davidson and Motorsports of Durham, LLC d/b/a Raging Bull Harley-Davidson (collectively, "the Employers") appeal from an order entered on remand from this Court[1] following the Supreme Court's decision in an earlier appeal, *Motorsports of Conyers, LLC v. Burbach*, 317 Ga. 206 (892 SE2d 719) (2023) ("*Motorsports I*"). The Employers contend that the trial court erred by concluding

---

[1] See *Burbach v. Motorsports of Conyers, LLC*, 370 Ga. App. 481 (897 SE2d 885) (2024) ("*Motorsports II*").

that the employment agreements they had with Burbach are unenforceable based on the Georgia Restrictive Covenants Act, OCGA § 13-8-50 et seq. ("GRCA"). Because the trial court erred by holding that the entire employment agreements were void, we reverse in part, and we dismiss as moot the remaining challenge to the order.

As explained in *Motorsports I*,

> [i]n 2016, Edmund Burbach was hired to work for a group of six Harley-Davidson dealerships under common ownership, including Motorsports of Conyers, LLC d/b/a Falcons Fury Harley-Davidson, and Motorsports of Durham, LLC d/b/a Raging Bull Harley-Davidson . . . Later that year, he was promoted to Chief Operating Officer, and he executed two employment agreements, one with Falcons Fury and one with Raging Bull ["the Employment Agreements"].

*Motorsports I*, 317 Ga. at 207–08(1)(a).

Each agreement contained identical language restricting certain activities by Burbach after the termination of his employment. Specifically, under the provision entitled "Covenant Not to Solicit and Not to Accept Employment with Competitor," the agreements stated the following:

General Manager [Burbach] covenants and agrees that during the Employment Period, including any renewal thereof, and for a period of three (3) years from the date of termination of General Manager's employment, as the case may be, General Manager shall not, directly, or indirectly:

a. solicit or approach any employees or customers of Employer or its affiliates or request any employees or customers of Employer or its affiliates to transfer employment or business from Employer or its affiliates to any other person, firm, partnership, corporation or other entity ["the Restriction on Business Solicitation"].

b. solicit or approach, or accept, employment from any person, firm, partnership, corporation or other entity who competes with the business of Employer as of such date within 120 miles of Employer and affiliates thereof . . . ["the Restriction on Employment"].

Likewise, with respect to confidential information, the agreements provided:

General Manager shall regard and preserve as confidential all Confidential Information pertaining to Employer's business . . . General Manager shall not, without the prior written consent of Employer, *use for his own benefit or purposes, or disclose to others, either during his employment or at any time thereafter*, and except as required in connection with his employment with Employer, *any Confidential Information* connected with the business operations and developments of Employer. General Manager shall not, without such prior written consent, take or retain or

3

copy any Confidential Information of Employer ["the Restriction on Confidential Information"].

The agreements define "Confidential Information" to include, among other things, customer lists, sales data, and financial matters.

Finally, the agreements included a choice of law provision stating that the agreements would be "governed by, and construed in accordance with, the laws of the State of Florida applicable to contracts executed in and to be performed in that State." Id. at 189-190 (quotation marks omitted).

Burbach's employment with the Employers terminated in December 2019, and he accepted a role at a competitor, Preston Cycles West, LLC d/b/a Thunder Tower West Harley-Davidson, 20 miles from one of the Employers' locations. *Motorsports I*, 317 Ga. at 208(1)(a). In August 2020, the Employers filed this action against Burbach,[2] seeking a temporary and permanent injunction with respect to employment, business solicitation, and trade secrets; specific performance; and damages for breach of contract. Along with the complaint, the Employers filed a Verified Motion and

---

[2] The Employers also named Preston Cycles West as a defendant, but they later settled those claims pursuant to a consent order in exchange for an agreement not to hire Burbach, among other things.

4

Brief for Expedited Temporary and Preliminary Interlocutory Injunctive Relief ("Verified Motion"). The Verified Motion invoked Florida law under the choice of law provision and sought temporary injunctive relief to preserve the status quo and enjoin Burbach from violating the Employment Agreements' Restriction on Business Solicitation, Restriction on Employment, and Restriction on Confidential Information.

Following an evidentiary hearing, the trial court entered an order on December 18, 2020, granting the Verified Motion ("the December 2020 order"). The trial court held in relevant part that the choice of Florida law was enforceable, and it enjoined Burbach from violating the covenants in the Employment Agreements.

Burbach appealed the December 2020 order[3] to this Court, which held that the trial court erred by not applying Georgia law. See *Burbach v. Motorsports of Conyers, LLC*, 363 Ga. App. 188, 194(3) (871 SE2d 63) (2022). The Employers appealed that decision to the Supreme Court, which held in *Motorsports I* that this Court missed the

---

[3] Burbach also moved for reconsideration of the December 2020 order, and the trial court entered an order on January 19, 2021 modifying the December 2020 order to specify that the geographic limitation was measured as 120 miles from the Employers' Falcons Fury and Raging Bull locations. See generally *Motorsports I*, 317 Ga. at 208(1)(b) ("The court therefore granted an interlocutory injunction that barred Burbach from working in any capacity for any competitor located within 120 miles of either Falcons Fury or Raging Bull.").

5

mark and clarified the applicable standard. See *Motorsports I*, 317 Ga. at 209–218(2), (3). Based on its analysis, the Supreme Court vacated the judgment of this Court and instructed us to vacate the judgment of the trial court and remand the case to the trial court,

> so that it may in the first instance apply the framework set out [in *Motorsports I*]. To do that, the trial court must first apply the GRCA to determine whether the restrictive covenants in Burbach's employment agreements comply with it. If the covenants are reasonable under Georgia law, see OCGA § 13-8-53, the court must then apply the parties' chosen law—Florida law—to determine their ultimate enforceability. If the covenants as written do not comply with the GRCA, then enforcing them would violate Georgia public policy, and so the court may not apply foreign law to enforce them. Instead, Georgia law would govern the covenants, and so the trial court would apply our law, including the GRCA's blue-penciling provision, to determine whether the restrictive covenants may be enforced in part.

*Motorsports I*, 317 Ga. at 218(3). This Court did so in *Motorsports II*, 370 Ga. App. at 481–82.

On remand, in January 2025, the parties briefed the trial court. Also that month, the Employers filed an amended complaint (the third) adding claims for relief under Georgia Law. Burbach moved for leave to amend his answer to include counterclaims

6

for wrongfully granted injunction, which motion the Employers opposed, but that motion has not been ruled upon by the trial court.

The next month, the trial court held a hearing and entered the order now appealed ("the February 2025 order"). The order stated:

> [T]he Court finds the agreements "as written" do not comply with the [GRCA], and therefore enforcing the Agreements would violate Georgia public policy. Subsequently, this Court may not apply Florida law but instead must apply Georgia law to determine whether the Agreements are enforceable. Furthermore . . . this Court finds that the Agreements cannot be modified under the GRCA. Even if the Agreements can be modified, the Court declines to modify or blue-pencil the Agreements. Thus . . . the court finds that the Agreements are unenforceable.

The order explained the court's rationale and concluded by reiterating that Georgia law applied, "the Agreements cannot be modified under the GRCA to render them enforceable[, and e]ven if the Court could do so, the Court declines to modify the Agreements and finds that the Agreements are unenforceable under Georgia law." The Employers now appeal.[4]

---

[4] The Employers initially appealed to the Supreme Court, which transferred the appeal to this Court in light of our jurisdiction over equity cases. See OCGA § 15-3-3.1(a)(2).

The issues before us present questions of law primarily with respect to statutory interpretation, which we review de novo. *Belt Power, LLC v. Reed*, 354 Ga. App. 289, 292(2) (840 SE2d 765) (2020).

> The fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. Statutes in derogation of the common law must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. On the other hand, when we interpret a statute, we do not look at the text in isolation. Rather, to determine its meaning, we also consider its context. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law that forms the legal background of the statutory provision in question.

Id. at 292–93 (2) (citations and punctuation omitted).

1. *Mootness.* We first address whether the appeal has become moot, as argued by Burbach, due to the passage of time. See *Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28, 29(1) (706 SE2d 660) (2011).

Importantly, the February 2025 order now on appeal was entered on remand after the appeal of the initial trial court ruling on the Verified Motion, filed in August 2020, seeking temporary injunctive relief to preserve the status quo — preventing

Burbach from competing after he left the Employers in December 2019. That is as far as this litigation has progressed, but enforcement of the three-year restrictions has become moot by the passage of time. See *Holton v. Physician Oncology Servs., LP*, 292 Ga. 864, 866(1) (742 SE2d 702) (2013) (citing *Kellam v. Guthman Laundry and Dry Cleaning Co.*, 147 Ga. 133–34 (92 SE 872) (1917) (question whether employer was properly granted injunction became moot after time expired for enforcing terms of order); *Hogan Mgmt. Servs., P.C. v. Martino*, 242 Ga. App. 791, 793(1) (530 SE2d 508) (2000) ("The duration of a covenant not to compete is not tolled during litigation. And when the duration of that covenant has expired, an action seeking injunctive relief pursuant to the covenant is moot.") (citation omitted).

Nevertheless, the Employers point to Burbach's motion to amend his answer to include a counterclaim for wrongful restraint[5] and argue that this revives the question of the enforceability of the three-year covenants. But that motion has not been ruled upon by the trial court, so the counterclaim may or may not proceed. Thus, any opinion on the viability of the three-year covenants would be advisory at the

---

[5] See, e.g., *Lutz v. Greensky, LLC*, 369 Ga. App. 518, 519(2) (894 SE2d 104) (2023) ("[A] party who is wrongfully restrained has the right to recover actual damages resulting from that wrongful restraint.").

present time because the trial court could deny Burbach's motion to add that counterclaim. Compare *Lutz*, 369 Ga. App. at 519–20(2). (holding that the appeal was not moot because the trial court had granted the defendant leave to amend their answer to add a counterclaim for wrongful restraint).

Accordingly, we need not address the viability of the three-year Restriction on Employment and Restriction on Business Solicitation; however, due to the broad scope of the trial court's order, our analysis does not end here, as explained below.

2. In related enumerations, the Employers argue that the trial court erred by ruling that the Employment Agreements were unenforceable in their entirety based on its conclusion that the Restriction on Employment was unenforceable. We agree.

The Employment Agreements controlled the terms and a variety of other aspects of Burbach's employment. They set forth, among other things, Burbach's duties and authority as general manager, his compensation and benefits, and his term of employment. As noted above, they also contained the three distinct restrictive covenants at issue in this action: a three-year restriction on soliciting customers or employees of the Employers, a three-year restriction on working at a competitor within 120 miles, and a broad restriction on Burbach's use of the Employers'

confidential information. As instructed by the Supreme Court on remand, the trial court endeavored to determine whether the restrictive covenants complied with the GRCA, which explicitly permits "enforcement of contracts that restrict competition during the term of a restrictive covenant, so long as such restrictions are reasonable in time, geographic area, and scope of prohibited activities...." OCGA § 13-8-53(a).

Nevertheless, the trial court's order focused only on the Agreements' three-year Restrictions on Employment and treated them as a proxy for the agreements in their entirety. The court held that based on the unreasonable restrictions on the scope of employment, duration, and geography "the Agreements are unenforceable."

Pretermitting the validity of the three-year restrictions, the trial court's holding that "the Agreements are unenforceable" is overbroad and would render void all the terms of Burbach's employment, including his salary and the scope of duties. This ignores the fact that the Employment Agreements set forth distinct sections by subject matter, and they each contain a severability clause stating, "[i]n case any provision of this Agreement shall be invalid, illegal, or otherwise unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby." . Thus, the trial court erred by voiding the agreements entirely.

11

See *Grayhawk Homes v. Addison*, 355 Ga. App. 612, 616–17(2) (845 SE2d 356) (2020) (finding restrictive covenant agreement severable despite the absence of a severability clause because the provision was written in its own separate section); *Holland Ins. Group, LLC v. Senior Life Ins. Co.*, 329 Ga. App. 834, 837(1)(a) (766 SE2d 187) (2014) ("Void restrictive covenants, which cannot be blue-penciled out of the contract, do not void the entire contract when the contract contains a severability clause." (punctuation omitted)). See also *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 799–800(1) (824 SE2d 717) (2019) ("[T]he concept of severability refers to striking a distinct part of a contract and allowing the remainder to stand, not to excising certain language contained in a single provision." (punctuation omitted)).

Further, with respect to the specific covenants at issue, voiding the entire agreements would void the Restriction on Confidential Information. The trial court never analyzed that provision, which is not subject to the same conditions of reasonableness applicable to the other covenants. Under OCGA § 13-8-53(e),

> [n]othing in [the GRCA] shall be construed to limit the period of time for which a party may agree to maintain information as confidential or as a trade secret, or to limit the geographic area within which such information must be kept confidential or as a trade secret, for so long as

the information or material remains confidential or a trade secret, as applicable.

In light of this statutory language, the trial court erred to the extent that it held that the Restriction on Confidential Information was void.[6]

This is consistent with the GRCA language stating that courts "shall construe a restrictive covenant to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." OCGA § 13-8-54(a). Under OCGA § 13-8-54(b), courts "may modify the restraint provision and grant only the relief reasonably necessary to protect such interest or interests and to achieve the original intent of the contracting parties to the extent possible." The trial court found that it could not modify any provision of the Employment Agreements based on its analysis of the three-year restriction, emphasizing that doing so would require the court "to add or supply language out of whole cloth." But this overlooks the fact that the GRCA defines "modify" to include "(A) [s]evering or removing that part of a restrictive covenant that would otherwise make the entire restrictive

---

[6] Any issues regarding the specific application of the Restriction on Confidential Information have not been raised and are not before us.

13

covenant unenforceable; and (B) [e]nforcing the provisions of a restrictive covenant to the extent that the provisions are reasonable." OCGA § 13-8-51(11) (punctuation omitted). Nothing about the Employment Agreements prevented the trial court from severing the three-year restrictions from the rest of the Employment Agreements and enforcing the provisions that do not violate the GCRA, including the Restriction on Confidential Information. Thus, the trial court erred by holding that "the Agreements cannot be modified in a manner that would render them enforceable because doing so requires the Court to engage in rewriting the Agreements beyond the authority allowed by the GRCA."

In summary, we hold that under the present procedural posture, the enforcement of the three-year Restriction on Business Solicitation and Restriction on Employment is moot, and we reverse the judgment that the remainder of each Employment Agreement is unenforceable, including the Restriction on Confidential Information. See generally *Holton*, 292 Ga. at 866(1)(dismissing portion of appeal due to the mootness of an expired restrictive covenant).

*Judgment reversed in part and appeal dismissed in part. Markle and Padgett, JJ., concur.*